[No. G027143. Fourth Dist., Div. Three. Apr. 24, 2001.]

BREHM COMMUNITIES et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
DICK E. CALDWELL et al., Real Parties in Interest.

[No. G027148. Fourth Dist., Div. Three. Apr. 24, 2001.]

BDO SEIDMAN, LLP, Petitioner,
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent; v.
DICK E. CALDWELL et al., Real Parties in Interest.

## COUNSEL

Gray Cary Ware & Freidenrich, Terry D. Ross, Kathryn E. Karcher, David Q. McClure and Tali M. Tuchin for Petitioners Brehm Communities and Forrest "Woody" Brehm.

Morrison & Foerster, Donald D. Dickerson, William B. Grenner and Paul V. McLaughlin for Petitioners Arter & Hadden, LLP, Ronald Warner, David Decker and Bruce H. Newman.

Sedgwick, Detert, Moran & Arnold, Gregory H. Halliday and Deborah L. O'Connor for Petitioners Squar, Milner & Reehl and Richard Squar.

Alschuler Grossman Stein & Kahan, Bruce A. Friedman, Michael L. Cypers and David B. Dreyfus for Petitioner BDO Seidman, LLP.

Munger, Tolles & Olson, Dennis E. Kinnaird, Rita J. Miller and Jose F. Sanchez for Petitioners Palmieri, Tyler, Wiener, Wilhelm & Waldron, LLP and George Wall.

No appearance for Respondent.

Law Offices of Floyd R. Brown, Floyd R. Brown; Grant, Williams, Lake & Dangerfield, Grant, Williams, & Dangerfield, Merwin D. Grant and Jace D. McKeighan for Real Parties in Interest Dick E. Caldwell, Mary E. Cerino, M. Gordon Dittemore, Angus Duncan, Bruce Rogers and Harvey G. Sinesio.

Latham & Watkins, Robert E. Currie and Allison M. Chock for Real Parties in Interest National Investors Financial Inc., L. C. Albertson, Jr., American Family Holdings, Inc., James N. Orth, Susan B. Orth, Estate of David G. Lasker, Charles F. Hanson, James G. Le Sieur III, Dudley Muth, J-Pat, L.P., and The Yale Partnership for Growth and Development, L.P.

## OPINION

**RYLAARSDAM, J.**—In ordering the trial court to vacate an order finding a settlement to be in good faith under Code of Civil Procedure section 877.6 (all further statutory references are to this code except as otherwise noted), we hold that settling parties must present competent evidence of the value of nonmonetary consideration to be transferred by them, and that the value of this consideration must be reduced by the value of any consideration passing from the plaintiffs to the settling defendants.

### FACTS

In this class action, plaintiffs sued 37 named defendants, in addition to 200 Does. Their 64-page second amended complaint asserts some 27 separate causes of action. Different causes of action are asserted against different defendants. The gist of the complaint is that defendants National Investors Financial Inc. (NIF) and its principals James Orth, Sue Orth, and David Lasker (deceased), the latter three characterized by plaintiffs as "Controlling Defendants," engaged in a scheme to defraud plaintiffs in the sale of securities. The remaining defendants include professionals, financial institutions, contractors, and others who allegedly participated in or facilitated the fraud or, because of their negligence, permitted the fraud to take place.

The complaint alleges that NIF administered plaintiffs' investments in portions of loans secured by deeds of trust. Plaintiffs allegedly invested $94 million. After the borrowers defaulted, NIF foreclosed, obtained title to the properties, and undertook to manage the properties. Plaintiffs allege they were assessed an additional $8 million for taxes on and maintenance of the properties.

Plaintiffs entered into a settlement agreement with NIF and the "Controlling Defendants" (collectively, settling defendants). Under the terms of the agreement no cash is to be paid to plaintiffs. The major provisions of the agreement are: (1) NIF transfers all its assets and legal rights relating to the subject of the lawsuit to plaintiffs. (2) Settling defendants waive all claims against plaintiffs. (3) Settling parties waive their right to arbitration. (4) Settling defendants' attorney fees and outstanding obligations to third parties will be paid by plaintiffs out of the assets transferred to them. (5) NIF and James Orth waive certain attorney-client privileges and agree to make information in the possession of some of their attorneys available to plaintiffs. (6) NIF will make all of its nonprivileged documents and information available to plaintiffs. (7) A previously appointed receiver may continue to oversee NIF's financial matters. (8) Plaintiffs' counsel will have access to all

receivership books. (9) Plaintiffs are granted the right to buy the individual settling defendants' interest in NIF for $1. (10) Plaintiffs and settling defendants, with minor exceptions, release each other and their directors, officers, and other persons affiliated with them from further liability. (11) Settling parties waive the benefit of Civil Code section 1542. (12) Plaintiffs will indemnify settling defendants from any claims that may arise relating to NIF. (13) Under a consulting agreement, for $10,000 per month, James Orth will be available to plaintiffs for 12 months. (14) The receiver will reduce the number of NIF's employees. (15) Prior to the execution of the agreement, the individual settling defendants will provide plaintiffs with financial statements for themselves, their families, and businesses owned by them. (16) The settlement is conditioned upon a review of its terms and of settling defendants' financial condition by retired Judge Leonard Goldstein and upon his determining the settlement is fair and the likelihood of collecting on a judgment against the settling defendants is minimal. (17) The settlement is conditioned upon a determination by the court that its terms constitute a good faith settlement. (18) A 1998 Chevrolet will be transferred without cost to the widow of defendant Lasker. The additional provisions include clauses pertaining to court approval of a good faith settlement and certification of a settlement class.

On motion of the settling parties and over the opposition of the nonsettling defendants, the court issued an order under section 877.6 determining that the settlement was in good faith. Defendants Brehm Communities and Forrest Brehm (collectively Brehm) and BDO Seidman, LLP, filed separate petitions in this court seeking writs of mandate to compel the trial court to set aside its order and issue a new order denying the motion. Defendants Arter & Hadden, Ronald Warner, David Decker, and Bruce H. Newman filed a joinder in both petitions as did defendants Richard Squar and Squar, Milner & Reehl. Defendants Palmieri, Tyler, Wiener, Wilhelm & Waldron LLP and George Wall joined in the petition of BDO Seidman. We ordered the petitions be consolidated and issued orders to show cause why the requested relief should not be granted.

## DISCUSSION

Any case dealing with the standards to be employed in our review of an order determining a settlement was in good faith under section 877.6 must begin with *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr 256, 698 P.2d 159] (*Tech-Bilt*). ■ There the court listed the following factors to be considered to satisfy the intent and policies underlying section 877.6: "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement,

the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. [Citation.]" (38 Cal.3d at p. 499.) *Tech-Bilt* relied on *Torres v. Union Pacific R.R. Co.* (1984) 157 Cal.App.3d 499, 509 [203 Cal.Rptr. 825] to note that "a defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be."

When a settlement involves the payment of money or even a dismissal in consideration of a waiver of costs, "the amount paid in settlement" is apparent, and application of the *Tech-Bilt* factors to the settlement, though far from a precise science, is nevertheless usually relatively easy. But where, as here, the consideration consists entirely of unvalued assets and intangibles, the task becomes much more burdensome.

■ There were two hearings on the motion. During the first hearing, the judge expressed concern that the moving parties had made no attempt to supply a valuation of the consideration. Apparently in response to this concern, plaintiffs filed supplemental points and authorities and a declaration of Floyd R. Brown, one of their attorneys. The Brown declaration states, in apparent ignorance about the hearsay rule, that retired Judge Leonard Goldstein, who had acted as a mediator, determined that the settlement was fair. The declaration also contains some conclusionary allegations indicating the potential liability of some of the defendants was tenuous. It justifies the transfer of the automobile to Lasker's widow because "far more than this sum could and probably would be spent continuing the settlement negotiations with the Lasker estate." We fail to see how this declaration could assist the court in placing a value on the settlement consideration.

The memorandum of points and authorities contains allegations leading to its author's conclusion that the settlement consideration should be valued at $2,279,000. But, as we noted in *Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573 [70 Cal.Rptr.2d 507], "matters set forth in . . . memoranda of points and authorities are not evidence . . . ." (*Id.* at p. 578.) Even if they were, the statements contained in the memorandum lack foundation and could not have been used by the court to evaluate the consideration.

■ Citing *Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858, 879 [239 Cal.Rptr. 626, 741 P.2d 124], Weil and Brown, California Practice

Guide: Civil Procedure Before Trial (The Rutter Group 2000) paragraph 12:880, page 12(II)-65 notes, "[w]here something other than immediate cash is paid, the *settling parties* must establish the value of the settlement. Without this information, the court cannot determine whether the settlement is within the 'ballpark' of the settling defendant's proportionate liability; nor the amount of setoff to which the nonsettling defendants are entitled." *Abbott Ford* involved a sliding-scale agreement that made the final settlement amount contingent on the outcome of the trial. The court held that even such a settlement can and must be evaluated, and noted that the initial burden to provide evidence of the value of the settlement falls on the settling parties. (*Abbott Ford, Inc. v. Superior Court, supra,* 43 Cal.3d at p. 879.) Settling parties failed to meet this burden here.

 There was no evidentiary basis permitting the court to determine whether the settlement satisfied the requirement that it be in good faith and fair to nonsettling parties. By apparently accepting the hearsay statement as to the evaluation of the settlement by retired Judge Leonard Goldstein, the court appears to have improperly delegated its authority. The court could have appointed Judge Goldstein as a referee to advise it under section 639, subdivision (a)(3). However, such a special reference would require that the referee issue a report (§ 643), and the decision of the referee would not be binding on the court. The court would consider the report as advisory and exercise its independent judgment. (*Aetna Life Ins. Co. v. Superior Court* (1986) 182 Cal.App.3d 431, 436 [227 Cal.Rptr. 460].)

Whether pursuant to the advice of a referee or based on the court's unaided review of the motion, the determination whether the settlement was in good faith must be based on competent, admissible evidence. Such a determination will be extremely difficult in this case. But the difficulty presented does not excuse the court from performing the task.

For example, the major item of consideration, the NIF assets, is likely to be capable of appraisal. But there seems to be little dispute that these assets already belong to plaintiffs; the transfer would therefore apparently convey little value to them, except a savings in the cost of further litigation. Defendants' waiver of their claims against plaintiffs should be capable of evaluation under conventional *Tech-Bilt* factors; on the present record it is impossible to ascertain what these claims are or defendants' chances of success with respect to them. The waiver of a right to arbitration, assuming it has not already been waived, possibly could be valued in terms of the moneys which would be saved by such a procedure, if any. The waiver of attorney-client privileges may be incapable of evaluation and, if so, only a nominal value may be assigned; but, if it can be demonstrated that certain

expenses would have to be incurred to duplicate the materials furnished pursuant to this promise, the estimate of such savings might provide a basis for evaluation. The same measure might be used to evaluate NIF's promise to make certain nonprivileged documents and information available to plaintiffs and to give them access to the receivership books (assuming plaintiffs do not already have such a right).

Under the terms of the settlement, substantial value will be transferred from plaintiffs to some of the settling defendants; the value of such consideration running to the settling defendants must be subtracted from the value of consideration received by plaintiffs. There is no indication in the record that settling parties provided evidence of the value of this consideration. The court should attempt to evaluate that consideration and reduce the overall value of the settlement accordingly. The value to be attributed to the defendants' attorney fees, which plaintiffs have agreed to pay, should be easily determined. It may be more difficult, but not impossible, using the *Tech-Bilt* factors, to place a value on plaintiffs' agreement to indemnify settling defendants from other claims relating to NIF.

By suggesting some methods the court might use to evaluate components of the settlement, we do not mean to indicate that these methods are exclusive. It is well possible that the court will determine other criteria are more appropriate; if so, such criteria should be used. Whatever methods of evaluation are selected, they must be based on competent evidence and not on mere speculation.

### DISPOSITION

The petition is granted. Let a writ of mandate issue directing the respondent superior court to vacate its order determining the settlement was in good faith and make a new and different order denying the motion for determination of good faith settlement. This order is without prejudice to settling parties renewing their motion for good faith settlement upon an adequate evidentiary showing. Petitioners and the parties joining in the petitions shall recover their costs incurred in connection with the petitions.

Sills, P. J., and O'Leary, J., concurred.

On May 22, 2001, the opinion was modified to read as printed above.