[No. B180788. Second Dist., Div. Four. July 6, 2005.]

FRANKLIN MINT COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MANATT, PHELPS & PHILLIPS et al., Real Parties in Interest.

1552

## COUNSEL

Loeb & Loeb, Andrew S. Clare and Lawrence B. Gutcho for Petitioners.

No appearance for Respondent.

Hill, Farrer & Burrill, Kevin H. Brogan; Munger, Tolles & Olson, Brad D. Brian, Bradley S. Phillips and Kristin S. Escalante for Real Parties in Interest Manatt, Phelps & Phillips and Mark S. Lee.

Quinn, Emanuel, Urquhart, Oliver & Hedges, Christopher Tayback and Christopher E. Price for Real Parties in Interest Trustees of the Diana Princess of Wales Memorial Fund and The Diana Princess of Wales Memorial Fund (No. 1) Limited.

## OPINION

**WILLHITE, J.**—This writ proceeding arises in a malicious prosecution action in which plaintiffs Franklin Mint Company and its control persons, Stewart and Lynda Resnick (collectively plaintiffs), reached a settlement with two defendants, the trustees of the Diana Princess of Wales Memorial Fund and the Diana Princess of Wales Memorial Fund (No. 1) Limited (collectively, the Fund). The settlement agreement provides, among other things, that the Fund will pay $25 million into escrow, from which a grant of $1 million will be made to a charitable foundation controlled by plaintiffs, and grants totaling $24 million will be made in the names of the Diana Princess of Wales Memorial Fund and the Resnicks (or a charitable foundation controlled by the Resnicks) to certain identified charities they have jointly approved. Further, the Fund will ensure the attendance of its CEO as a witness at trial against the remaining defendants, and promises good faith efforts to aid plaintiffs in obtaining the attendance of third party witnesses.

The trial court declared the settlement to be in good faith under Code of Civil Procedure section 877.6.[1] Under section 877, subdivision (a), the court fixed the value of the setoff for the nonsettling defendants, Manatt, Phelps & Phillips and Mark S. Lee, Esq. (collectively, Manatt), at $25 million.[2]

Plaintiffs petition for a writ of mandate, challenging the setoff valuation. We hold that the settlement is one in which intangible, noncash elements affect the value of the settlement, and that, therefore, "the amount of the consideration paid" within the meaning of section 877, subdivision (a), is not equivalent to the amount of money paid by the Fund. We further hold that because the settling parties failed to set a value for the settlement, and failed to present competent evidence proving a value, the trial court's setoff determination, and its finding that the settlement was in good faith, cannot stand. Therefore, we grant the petition, and direct the trial court to set aside its previous order declaring the settlement to be in good faith. We do so without prejudice to further proceedings under sections 877.6 and 877 consistent with this opinion.

## BACKGROUND

The underlying malicious prosecution lawsuit filed by plaintiffs is based upon an action the Fund, represented by Manatt, filed against plaintiffs. For our purposes, the facts underlying the lawsuit are not relevant. Following negotiations, the Fund and plaintiffs entered into a settlement of the malicious prosecution action. The settlement agreement provides as follows: in exchange for plaintiffs' dismissal with prejudice of the claims alleged against the Fund, (1) the Fund will transfer $25 million to an interest-bearing escrow account, to be held in the name of the Fund and plaintiffs; (2) a grant in the amount of $1 million will be made from the escrow account to the Resnick Foundation, a charitable foundation controlled by plaintiffs, to be distributed by the Foundation to charities at the sole discretion of the Foundation; (3) grants in various amounts, totaling $24 million, will be made from the escrow account, in the name of the Diana Princess of Wales Memorial Fund and the Resnicks or their Foundation, to certain identified charities;[3] and (4) the Fund

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

[2] The complaint includes an additional plaintiff, Roll International Corporation, and additional defendants (the executors of the Estate of Diana, Princess of Wales). None of those parties are involved in this proceeding.

[3] The distributions are to be made within five years after the funds are deposited into the escrow account. Once all of the distributions are made and any expenses associated with the escrow account are paid, the interest earned on the money in the escrow account will be paid to the Fund.

will cause Dr. Andrew Purkis, the CEO of the Fund, to make one trip to Los Angeles, at plaintiffs' expense, to testify at trial and will make reasonable and good faith efforts to secure, at plaintiffs' expense, the attendance at trial of third party witnesses. The agreement does not provide a value for the consideration given in exchange for the dismissal.

The Fund moved for a good faith settlement determination under section 877.6. The Fund presented evidence that plaintiffs' intent from the outset of the litigation was to contribute any recovery from the Fund to charity. The Fund did not attempt to assign a specific value to the consideration paid. Instead, the Fund stated the value is at least $1 million (the amount to be granted to plaintiffs' Foundation) and could be as much as $25 million (the entire amount being paid into the escrow account for charitable purposes). The Fund argued that even if it is valued at $1 million, the consideration paid is not grossly disproportionate to the Fund's potential liability, and thus meets the criteria for a good faith settlement under sections 877 and 877.6 and *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159].

Manatt filed a "conditional nonopposition" to the Fund's motion, stating that it did not oppose the motion so long as (1) plaintiffs are not permitted to introduce evidence of the agreement or its terms at trial and (2) the Fund and plaintiffs agree that Manatt is entitled to a $25 million setoff against any damage award they might obtain against Manatt. Manatt did not provide any evidentiary support for its position that the value of the consideration paid for the settlement is equal to the entire amount paid into the escrow account.

Plaintiffs filed a reply to Manatt's conditional nonopposition, and argued that the value of the consideration is limited to $1 million because the remainder of the funds in the escrow account will be distributed to charities "selected and approved by the Fund, per 'grant applications' to be approved by the Fund." In support of their assertion, plaintiffs submitted evidence that the Fund refused to give control to plaintiffs of any amount more than $1 million as part of the settlement because the Fund needed to ensure that the remainder of the settlement money went to charities within the purposes of the Fund.

The trial court granted the Fund's motion. The court stated, "It just seems to me that in reviewing all of this that this is, in fact, a $25 million

settlement." Based upon that finding, the court found the settlement was made in good faith and that Manatt is entitled to an offset of $25 million against any damages that may be awarded against it.

## DISCUSSION

Plaintiffs petitioned this court under section 877.6, subdivision (e), challenging the trial court's finding that Manatt is entitled to a $25 million offset. They argue they produced evidence that the value of the consideration they received is only $1 million, that Manatt failed to produce any evidence that the value plaintiffs received is $25 million, and therefore Manatt is only entitled to an offset of $1 million. We issued an order to show cause why the trial court should not be ordered to vacate its order to the extent it ordered a setoff value of $25 million and to enter a new and different order setting the value at some amount between $1 million and $25 million.

A. *Procedure for Determining Setoff*

■ In *Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858 [239 Cal.Rptr. 626, 741 P.2d 124] (*Abbott Ford*), the California Supreme Court observed that the good faith settlement provisions set forth in sections 877 and 877.6 have two primary goals: the equitable sharing of costs among the parties at fault and the encouragement of settlements. (*Abbott Ford, supra,* at pp. 872–873.) The court explained that these two goals are "inextricably linked" because "[s]ection 877 establishes that a good faith settlement bars other defendants from seeking contribution from the settling defendant (§ 877, subd. (b)), but at the same time provides that the plaintiff's claims against the other defendants are to be reduced by 'the amount of consideration paid for' the settlement (§ 877, subd. (a)). Thus, while a good faith settlement cuts off the right of other defendants to seek contribution or comparative indemnity from the settling defendant, the nonsettling defendants obtain in return a reduction in their ultimate liability to the plaintiff." (*Id.* at p. 873; see also *United Services Automobile Assn. v. Superior Court* (2001) 93 Cal.App.4th 633, 641 (*USAA*) [113 Cal.Rptr.2d 328] ["A fundamental feature of a good faith settlement is allowing the nonsettling tortfeasor defendant a credit against any judgment taken against it to the extent of the value of the consideration paid by the settling tortfeasor"].)

■ A court considering the amount of credit or setoff to be accorded a nonsettling defendant under sections 877 and 877.6 must take into account these two goals, as well as another important public policy: " 'the maximiza-

tion of recovery to the plaintiff for the amount of . . . injury to the extent that negligence or fault of others has contributed to it.' [Citation.] Thus, while the nonsettling defendant is entitled to a fair setoff, the injured plaintiff also has a right that the setoff not be excessive." (*Erreca's v. Superior Court* (1993) 19 Cal.App.4th 1475, 1500 [24 Cal.Rptr.2d 156] (*Erreca's*).)

■ Under subdivision (a) of section 877, the amount of the setoff is, in the absence of a stipulation, "the amount of the consideration paid for [the release or dismissal]."[4] But the amount of *consideration* paid within the meaning of section 877, subdivision (a) is not necessarily the amount of *money* paid. Often "the amount of the offset is clouded by injection of noncash consideration into the settlement." (*Alcal Roofing & Insulation v. Superior Court* (1992) 8 Cal.App.4th 1121, 1124 [10 Cal.Rptr.2d 844] (*Alcal Roofing*); see *Arbuthnot v. Relocation Realty Service Corp.* (1991) 227 Cal.App.3d 682 [278 Cal.Rptr. 135]; *Armstrong World Industries, Inc. v. Superior Court* (1989) 215 Cal.App.3d 951, 956–957 [264 Cal.Rptr. 39].) "In a situation where the cash amount of the settlement does not dictate the amount of the offset, the settling parties must include an allocation or a valuation in their agreement." (*Alcal Roofing, supra,* 8 Cal.App.4th at pp. 1124–1125.) As the Supreme Court stated in the context of a sliding-scale settlement agreement (where the amount of the offset similarly cannot be readily determined), "the court should not be burdened with the obligation to determine the *actual* value of such an agreement . . . . Rather, the parties to such an agreement, since they are in the best position to place a monetary figure on its value, should have the burden of establishing the monetary value . . . . [¶] . . . In addition, since the plaintiff and the settling defendant are likely to have somewhat different, and somewhat conflicting interests in placing a value on the agreement—the plaintiff would prefer the value to be on the low side to reduce the amount that its claims against other defendants will be reduced; the settling defendant will want the value to be high enough to assure that the agreement is found to be within its *Tech-Bilt* 'ballpark' so as to relieve it of liability for comparative indemnity or contribution—requiring a joint valuation by the plaintiff and the settling defendant should generally produce a reasonable valuation. [Citation.]" (*Abbott Ford, supra,* 43 Cal.3d at p. 879.)

---

[4] Section 877 states in relevant part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more co-obligors mutually subject to contribution rights, it shall have the following effect: [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, *or in the amount of the consideration paid for it* whichever is the greater. [¶] (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties." (Italics added.)

 Thus, in moving under section 877.6 for a good faith settlement determination, the moving party must set forth the value of the consideration paid and an evidentiary basis for that valuation, and must demonstrate that the valuation "was reached in a sufficiently adversarial manner to justify the presumption that a reasonable valuation was reached." (*Erreca's, supra,* 19 Cal.App.4th at p. 1496; see also *USAA, supra,* 93 Cal.App.4th at p. 644 [valuation must be "supported by specific evidence, declaration, or opinion"]; *Brehm Communities v. Superior Court* (2001) 88 Cal.App.4th 730, 736 [105 Cal.Rptr.2d 918] ["the initial burden to provide evidence of the value of the settlement falls on the settling parties"] (*Brehm*); *Regan Roofing Co. v. Superior Court* (1994) 21 Cal.App.4th 1685, 1704 [27 Cal.Rptr.2d 62] [settling parties are required to "furnish to the court and to all parties an evidentiary showing of a rational basis for . . . the credits proposed"] (*Regan Roofing*).) A nonsettling defendant may then challenge the settlement by "attempt[ing] to prove that the parties' assigned value is too low and that a greater reduction in plaintiff's claims against the remaining defendants is actually warranted." (*Abbott Ford, supra,* 43 Cal.3d at p. 879.)

 The nonsettling defendant's right to challenge the valuation of the settlement should not, however, be interpreted as giving that defendant a right to a mini-trial on the valuation issue. (*Abbott Ford, supra,* 43 Cal.3d at pp. 879–880, fn. 23; accord, *Erreca's, supra,* 19 Cal.App.4th at p. 1489; *Regan Roofing, supra,* 21 Cal.App.4th at p. 1701.) "The nature, extent and the procedure regarding any such challenge is left to the discretion of the trial court." (*Abbott Ford, supra,* 43 Cal.3d at pp. 879–880, fn. 23.) The trial court's determination of the value of the consideration paid will be upheld on appeal if supported by substantial evidence. (*Regan Roofing, supra,* 21 Cal.App.4th at p. 1714; *Erreca's, supra,* 19 Cal.App.4th at p. 1498.)

B. *Application to This Case*

We view the settlement in this case to be one in which the "amount of the consideration paid" within the meaning of section 877, subdivision (a) is not the amount of money the Fund deposited into the escrow account. Rather, *intangible elements materially affect the valuation. No money will be paid directly to plaintiffs; all funds will go to charity.* This result is consistent with plaintiffs' intention from the outset to donate any recovery (whether by trial or settlement) to charity. But only a small portion of the funds paid into the escrow account will go to charities chosen exclusively by plaintiffs, and only those charitable donations will be made solely in the name of plaintiffs' foundation. The majority of the escrow funds—$24 million—will be donated

to certain identified charities jointly approved by the Fund and plaintiffs, the donations to be made jointly in the names of the Diana Princess of Wales Memorial Fund and the Resnicks or their Foundation.

Thus, although the Fund parts with $25 million in exchange for a release and dismissal by plaintiffs, the cost of the $25 million is discounted by intangible benefits the Fund receives: it participated in the selection of the charities that will receive $24 million in donations, thus ensuring that the charities fall within the purposes of the Fund; and it receives partial credit for the contributions, because they will be made in its name jointly with plaintiffs. Further, it might well be that publicly identifying these charitable recipients will aid the Fund's efforts at soliciting contributions—a so-called advertising value. These intangible factors have value—value inuring to the Fund's benefit, and hence lessening the true economic cost of the money paid.

Similarly, the true economic benefit to plaintiffs must be discounted. Although plaintiffs may be deemed to have received the full benefit of the $1 million paid to the foundation they control, plaintiffs do not receive the full benefit of the remaining $24 million. They did not unilaterally elect the recipient charities, and (most importantly) will receive only partial credit for the charitable donations. They may, however, receive some advertising value by publicizing the donations. Further, the settlement provides additional, noncash benefits to plaintiffs: the assurance that the Fund's CEO will appear as a witness at trial, and the assurance that the Fund will cooperate in obtaining third party witnesses.

Thus, determining the value of the consideration paid clearly requires more than a mere presentation of the terms of the settlement. In the proceedings below, the settling parties failed in their obligation to set a value for the consideration, supported by admissible evidence. Similarly, Manatt presented no evidence to support its assertion that the value of the consideration is the full $25 million the Fund paid into the escrow account. Therefore, the trial court had no evidence on which it could base a reasoned decision, in light of the noncash elements, as to the credit to which Manatt is entitled.

■ On appeal, Manatt contends the value of the consideration must be the entire amount of money the Fund paid into the escrow account because the value can only be increased, not decreased, by intangible elements. But there is nothing in the statutory language or cases involving intangible elements of consideration for settlements—or in logic—that limits those intangible elements to those that increase the value of the consideration paid.

Indeed, logic and policy dictate that *all* intangible elements—those that increase *or* decrease the value of the benefit conferred by the promisee or received by the promisor—must be considered when determining the amount of consideration paid. If this were not the case, a nonsettling defendant would receive a windfall and the plaintiffs would not recover the full amount of their damages, thus defeating two of the important public polices that must be considered when making good faith settlement determinations, i.e., the encouragement of settlements and the maximization of recovery to the plaintiffs for the amount of their injury. (*Erreca's, supra,* 19 Cal.App.4th at p. 1500; *Franck v. Polaris E-Z Go Div. Of Textron, Inc.* (1984) 157 Cal.App.3d 1107, 1116–1118 [204 Cal.Rptr. 321].)

█ Plaintiffs, on the other hand, contend the intangibles we identify are "unquantifiable" and "ethereal," and that any attempt to value them would be "madcap speculation." Hyperbole aside, no doubt valuation will be difficult. "But the difficulty [in valuing the elements of a settlement] does not excuse the court from performing the task" (*Brehm, supra,* 88 Cal.App.4th at p. 736), nor does it excuse the settling parties from setting a value in the first instance (*USAA, supra,* 93 Cal.App.4th at p. 645 ["the settling parties must engage each other in a meaningful effort to resolve the basic issues, including the valuation of the . . . consideration"]). It is not at all apparent to us that a series of donations totaling $24 million, made in the joint names of the settling parties to charities they selected, is so "ethereal" as to make an attempt at valuation the equivalent of grasping at the heavens. Nor is it apparent, without supporting evidence, that the Fund's promises to make its CEO available as a witness and to cooperate in obtaining the attendance of third party witnesses is impossible to value.

█ In any event, the settling parties cannot set the court adrift by asserting that the value lies somewhere between $1 million and $25 million (the Fund's position), or that the value of the intangibles related to the $24 million in donations is impossible to asses and therefore has zero value (plaintiffs' position). In moving for a good faith settlement determination, the settling parties must present admissible evidence showing the value of the consideration—*all elements of consideration.* (*Brehm, supra,* 88 Cal.App.4th at pp. 736–737.) Moreover, when challenging the settling parties' valuation, Manatt, the nonsettling defendant, must do more than simply assert that the value is the amount of money deposited into the escrow account; it must present competent evidence to support its position that no discount is warranted.

For instance, the parties could submit declarations from competent witnesses, including perhaps the settling parties themselves, on the historical economic effect, if any, of certain factors on charitable solicitations and

donations. Those declarations could be competent evidence to show what effect the so-called advertising value, and the ability to participate in (or the loss of sole control over) the choice of charitable recipients, might have on the value of the consideration paid in the settlement. The value of the Fund's promises to make its CEO available as a witness, and to cooperate in obtaining third party witnesses, might be established by estimating the costs plaintiffs might otherwise incur without such aid by the Fund. But if any of the intangibles are incapable of valuation and hence only entitled to a nominal value, the settling parties must present competent evidence that no reasonable basis of valuation exists.[5]

"By suggesting some methods the court might use to evaluate components of the settlement, we do not mean to indicate that these methods are exclusive. It is well possible that the court will determine other criteria are more appropriate; if so, such criteria should be used. Whatever methods of evaluation are selected, they must be based on competent evidence and not on mere speculation." (*Brehm, supra,* 88 Cal.App.4th at p. 737.) We also recognize, as have the Supreme Court and other Courts of Appeal, that the trial court, when called upon to assess the accuracy of the settling parties' valuation of the consideration, may not be able to do more than make its own best estimate. (See, e.g., *Abbott Ford, supra,* 43 Cal.3d at pp. 879–880, fn. 23; *Erreca's, supra,* 19 Cal.App.4th at p. 1489.) However, without any valuation made by the settling parties, and evidence to support that valuation, the trial court cannot make any valid finding of value. Without such a finding, there can be no determination that the settlement was in good faith. (See *Arbuthnot v. Relocation Realty Service Corp., supra,* 227 Cal.App.3d at p. 690 ["As a practical matter, the failure to fix the amount of consideration makes it impossible to determine whether that amount is within the reasonable range of the settling tortfeasor's share of comparative liability. . . . Further, if the settlement is approved without determining the amount of setoff, the settling defendant's incentive to participate in fixing the value of the settlement vanishes"]; see also *USAA, supra,* 93 Cal.App.4th at p. 642 ["As a condition to obtaining a court approval that the settlement is made in 'good faith,' a fair value must be assigned" to a contingent loan made as part of the settlement].)

---

[5] We do not mean to suggest that Manatt must be given an opportunity to conduct discovery and a trial on issues related to valuation. The amount of discovery—*if any*—to be allowed and the scope of the good faith settlement proceeding rests in the sound discretion of the trial court. Manatt's reliance on *Rankin v. Curtis* (1986) 183 Cal.App.3d 939 [228 Cal.Rptr. 753], in support of its assertion of an absolute right to discovery is misplaced inasmuch as *Rankin* was decided before the Supreme Court made clear in *Abbott Ford* that a nonsettling defendant does not have a right to a mini-trial on the valuation issue.

## DISPOSITION

The order to show cause is discharged. Let a writ of mandate issue directing respondent court to vacate its order determining the settlement was in good faith, and to enter a new and different order denying the motion for good faith settlement. This order is without prejudice to the settling parties renewing their motion for good faith settlement, supported by adequate evidence. Petitioners shall recover their costs in connection with the petition.

Hastings, Acting P. J., and Curry, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied September 21, 2005. George, C. J., did not participate therein.