[No. H028310. Sixth Dist. Dec. 15, 2006.]

RONALD WAKEFIELD, Plaintiff and Appellant, v.
JEFF BOHLIN et al., Defendants and Respondents.

966

## COUNSEL

Jeffrey P. Widman and Timothy D. Widman for Plaintiff and Appellant.

Law Offices of Edward P. Mathewson, Edward P. Mathewson; Ropers, Majeski, Kohn & Bentley, Mark G. Bonino and Theresa M. Biagini for Defendants and Respondents.

## OPINION

McADAMS, J.—This is the second appeal in this civil action, which was brought by plaintiff Ronald Wakefield following his purchase of a home from defendants Jeff and Charlotte Bohlin. In Wakefield's first appeal, we affirmed the trial court's disposition of three causes of action in the Bohlins' favor, two by summary adjudication and one by nonsuit. In this appeal, Wakefield contests the trial court's postjudgment award of attorney fees and costs to the Bohlins, which was based on the court's determination that they were prevailing parties.

We conclude that the trial court erred. As we explain: (1) Plaintiff Ronald Wakefield categorically qualifies as a prevailing party, and he is entitled to recover his litigation costs, including attorney fees. (2) Defendant Jeff Bohlin is not a prevailing party, and he may not recover costs or fees. (3) Because of the Bohlins' unity of interest in this litigation, Charlotte Bohlin is not categorically a prevailing party, and any cost award in her favor is discretionary and subject to apportionment; moreover, she is not entitled to recover attorney fees. We therefore reverse the order awarding costs and fees, and we remand the matter to the trial court for further proceedings.

### BACKGROUND[1]

*Facts*

In 1999, the Bohlins purchased a house on Finch Drive in San Jose. Jeff Bohlin extensively remodeled the house, essentially constructing a new, larger home around the old one, leaving only the original foundation.

In 2001, Wakefield purchased the Finch Drive property from the Bohlins. Shortly after Wakefield moved into the property, various construction defects and other problems with the home became evident.

---

[1] As requested by the Bohlins, we have taken judicial notice of the clerk's transcript in the parties' first appeal, *Wakefield v. Bohlin* (Feb. 8, 2006, H028008) (nonpub. opn.).

*The Complaint*

In June 2002, Wakefield filed this litigation against the Bohlins and others. The other defendants included the Bohlins' real estate agent, Fred Davis, and his agency, Century 21, SVCA, Inc. (collectively, the realtor defendants), and Talaveras Plastering and some of its principals (collectively, the plastering defendants). The litigation also generated third party cross-complaints, but neither the Bohlins nor any other defendants cross-complained against Wakefield.

Wakefield asserted six causes of action in his complaint: negligent misrepresentation and fraud, which Wakefield asserted against the Bohlins and the realtor defendants; professional negligence, against the realtor defendants only; negligence, against Jeff Bohlin and the plastering defendants; and developers' strict liability and breach of implied warranty, asserted against the Bohlins only. Wakefield sought compensatory and punitive damages, plus costs of suit, including attorney fees.

*Resolution of Wakefield's Claims*

*Summary Adjudication*: In May 2004, the trial court disposed of the fifth and sixth causes of action of Wakefield's complaint (for strict liability and breach of implied warranty) when it granted the Bohlins' motion for summary adjudication as to those claims.

*Settlements*: As the August 2004 trial date approached, Wakefield settled his claims against all defendants except the Bohlins. The realtor defendants, who were named in the first, second, and third causes of action, paid Wakefield $45,000. The plastering defendants, named in the fourth cause of action, paid Wakefield $51,700.

*Nonsuit*: In August 2004, the case went to jury trial. Following Wakefield's offer of proof, the trial court granted nonsuit in favor of Jeff Bohlin on Wakefield's fourth cause of action for negligence.

*Verdict*: Wakefield's remaining claims for fraud and negligent misrepresentation were then tried to the jury. On the fraud claim, the jury returned with a verdict in favor of both Jeff and Charlotte Bohlin. On the cause of action for negligent misrepresentation, the jury exonerated Charlotte Bohlin, but it found against Jeff Bohlin and in favor of Wakefield on that claim, and it awarded Wakefield $33,950 in damages.

*Judgment*

In August 2004, the court entered judgment.

The judgment recites the results of the special jury verdicts, and it also notes the earlier disposition of Wakefield's other claims by summary adjudication, nonsuit, and settlement.

The judgment orders (1) that "plaintiff shall take nothing by his complaint from defendant Charlotte Bohlin and that Charlotte Bohlin have and recover from [Wakefield] costs and attorney fees as provided by law"; and (2) "that plaintiff shall take nothing by his complaint from defendant Jeff Bohlin. Any claim for costs and attorney fees as between these parties shall be determined in accordance with law."

*Cost Award*

In August 2004, Wakefield objected to the court's preliminary determination that the Bohlins were the prevailing parties. The Bohlins responded to that objection.

In September 2004, the Bohlins and Wakefield each filed a memorandum of costs. Each side also moved to strike or tax the costs claimed by the other.

In October 2004, Wakefield filed a motion, seeking a determination that he was the prevailing party and asking the court for attorney fees. The Bohlins filed a similar motion.

In November 2004, the court heard argument from both parties, then took the matter under submission. Its subsequent written ruling states: "The court determines that defendants Jeff and Charlotte Bohlin are prevailing parties. Costs are awarded in favor of Jeff and Charlotte Bohlin and against Ronald P. Wakefield, jointly and severally, as follows: $100,000.00 as reasonable attorney's fees and $7,721.00 non-attorney fee costs as shown on the memorandum of costs filed September 7, 2004. Total costs, including attorney's fees are awarded in favor of Jeff and Charlotte Bolin and against Ronald P. Wakefield, jointly and severally, in the amount of $107,721.00. [¶] The motion brought by Ronald P. Wakefield to determine that he is the prevailing party, and to award him attorney fees and costs, is denied in its entirety."

*Appeals*

In his first appeal, Wakefield challenged the August 2004 judgment, asserting that the trial court erred in disposing of his fourth, fifth, and sixth causes of actions by nonsuit and summary adjudication. We resolved those claims adversely to Wakefield in our unpublished opinion in *Wakefield v. Bohlin, supra,* H028008.

Wakefield gave notice of this second appeal in December 2004. In this appeal, Wakefield challenges the November 2004 postjudgment order that awards the Bohlins their costs, including attorney fees.

## CONTENTIONS

Wakefield asserts that he is a prevailing party entitled to his costs as a matter of right under Code of Civil Procedure section 1032.[2] He contends that the trial court lacked discretion to consider the pretrial settlements in making its prevailing party determination. Alternatively, Wakefield argues, the court abused its discretion in awarding costs to the Bohlins, because they failed to comply with the mediation clause in the real estate purchase contract.

The Bohlins defend the trial court's order. First, they dispute Wakefield's entitlement to costs under section 1032, arguing that he does not fall within any of the four categorical definitions of prevailing party that give rise to a mandatory cost award. By contrast, they assert, categorically, Charlotte Bohlin was a prevailing party. Finally, they contend, the trial court's award of costs and fees to Jeff Bohlin was within its discretion.

## DISCUSSION

To provide the proper framework for our analysis, we begin by describing the governing legal principles. We then apply them to the case at hand.

### I. *General Legal Principles*

■ "The right to recover costs is wholly dependent on statute." (*Crib Retaining Walls, Inc. v. NBS/Lowry, Inc.* (1996) 47 Cal.App.4th 886, 889 [54 Cal.Rptr.2d 850].) In this case, the relevant statute is section 1032.

#### A. *Prevailing Party*

##### 1. *Definition*

■ Section 1032 defines prevailing party for purposes of an award of litigation costs. It reads: "(a) As used in this section, unless the context clearly requires otherwise: [¶] . . . [¶] 4) 'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief

---

[2] Further unspecified statutory references are to the Code of Civil Procedure.

against that defendant. When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034." (§ 1032, subd. (a)(4).)

### 2. *Entitlement to costs*

Under section 1032, the prevailing party in litigation is entitled to costs. Subdivision (b) thus provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b); see *Chaparral Greens v. City of Chula Vista* (1996) 50 Cal.App.4th 1134, 1151–1152 [58 Cal.Rptr.2d 152].)

### B. *Attorney Fees as Allowable Costs*

■ Attorney fees are allowable as costs, but only if they are authorized by law or by contract. (§§ 1033.5, subd. (a)(10), 1021.) "Thus, recoverable litigation costs do include attorney fees, but only when the party entitled to costs has a legal basis, independent of the cost statutes and grounded in an agreement, statute, or other law, upon which to claim recovery of attorney fees." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 606 [71 Cal.Rptr.2d 830, 951 P.2d 399] (*Santisas*).)

■ Here, both sides claim attorney fees based on their real estate purchase contract, which contains a broad attorney fee clause.[3] "If a contractual attorney fee provision is phrased broadly enough, . . . it may support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims . . . ." (*Santisas, supra,* 17 Cal.4th at p. 608.) But different statutes govern recovery of fees in the two types of actions.

### 1. *Contract claims; Civil Code section 1717*

■ In contract actions, Civil Code section 1717 governs attorney fee agreements. (*Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 610 [43 Cal.Rptr.2d 399], disapproved on another point in *Santisas, supra,* 17 Cal.4th at p. 609, fn. 5.) "Section 1717 is the applicable statute when determining whether and how attorney's fees should be awarded under a contract." (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1157 [70 Cal.Rptr.2d 769]

---

[3] Paragraph 17C of the parties' agreement provides: "In event of any legal action, arbitration, or other proceeding between Buyer and Seller arising out of this Contract, the prevailing Buyer or Seller shall be awarded reasonable attorneys' fees and court or arbitration costs in addition to any other judgment or award."

(*Sears*).) Under Civil Code section 1717, as a general rule, "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." (Civ. Code, § 1717, subd. (b)(1).) But the statute also allows the court to "determine that there is no party prevailing on the contract for purposes of this section." (*Ibid.*)

Notably, however, "Civil Code section 1717 has a limited application. It covers *only* contract actions, where the theory of the case is breach of contract, and where the contract sued upon itself specifically provides for an award of attorney fees incurred to enforce *that* contract." (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342 [5 Cal.Rptr.2d 154].) Thus, it has been held that section would not govern where—for example—"the buyers initially sued for breach of contract," but "they did not go to trial on that basis [and instead] limited their action to fraud and negligent misrepresentation." (*Childers v. Edwards* (1996) 48 Cal.App.4th 1544, 1548 [56 Cal.Rptr.2d 328].)

### 2. *Noncontract claims; Sections 1021 and 1033.5*

As for attorney fee awards when the claim is not on the contract, the Code of Civil Procedure governs. (*Sweat v. Hollister, supra,* 37 Cal.App.4th at p. 610.) Sections 1021 and 1033.5 are the relevant provisions.[4] They appear in part 2, title 14, chapter 6, which deals with litigation costs.

"Using section 1021 as a foundation, a line of cases has held that the type of contractual attorney fee provision at issue here is broad enough to authorize a request for attorney fees in a tort-based misrepresentation action arising out of the contract." (*Childers v. Edwards, supra,* 48 Cal.App.4th at p. 1549.) That line of cases culminated with the California Supreme Court's decision in *Santisas, supra,* 17 Cal.4th 599.

■ As our state's high court clarified in *Santisas,* under some circumstances, attorney fees may be recovered under the Code of Civil Procedure, even when they are precluded under Civil Code section 1717. (*Santisas, supra,* 17 Cal.4th at pp. 617–618, 619.) In *Santisas,* the court thus rejected the argument that "attorney fees incurred to litigate tort or other noncontract claims, which are outside the scope of section 1717, may never be recovered

---

[4] Section 1021 provides as follows: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs . . . as hereinafter provided."

Section 1033.5 provides in pertinent part as follows: "(a) The following items are allowable as costs under Section 1032: [¶] . . . [¶] (10) Attorney fees, when authorized by any of the following: [¶] (A) Contract. [¶] (B) Statute. [¶] (C) Law."

as costs under a contractual attorney fee provision." (*Id.* at p. 618.) Thus, even where a litigant does not qualify as a "party prevailing on the contract" under Civil Code section 1717—for example, when there has been a voluntary dismissal, as was the case in *Santisas*—that circumstance "does not affect the . . . right to recover as costs the attorney fees . . . incurred in defense of the tort claims. Because section 1717 does not apply to those claims [citations], it does not bar recovery of attorney fees that were incurred in litigation of those claims and that are otherwise recoverable as a matter of contract law." (*Santisas*, at p. 619.) But as the court explained, "section 1021 does not *independently* authorize recovery of attorney fees. Rather, consistent with subdivision (a)(10) of . . . section 1033.5, . . . section 1021 recognizes that attorney fees incurred in prosecuting or defending an action may be recovered as costs only when they are otherwise authorized by statute or by the parties' agreement." (*Id.* at p. 607, fn. 4, italics added.)

## II. *Analysis: Prevailing Party Determination*

The statutory definition of prevailing party contains two sentences, each representing a separate definitional prong. (See § 1032, subd. (a)(4).) As the Bohlins aptly describe it, "section 1032 splits 'prevailing parties' into two distinct groups: Those specified in the four categories contained in the first sentence of subdivision (a)(4), and those who are within the court's discretion as defined in the second sentence of subdivision (a)(4)."

### A. *Section 1032, Subdivision (a)—First Prong*

The first prong describes four categories of litigants who automatically qualify as prevailing parties. It reads: " 'Prevailing party' includes [1] the party with a net monetary recovery, [2] a defendant in whose favor a dismissal is entered, [3] a defendant where neither plaintiff nor defendant obtains any relief, and [4] a defendant as against those plaintiffs who do not recover any relief against that defendant." (§ 1032, subd. (a)(4).)

#### 1. *The prevailing party determination is not discretionary under the first prong*

As explained in the relevant case law, the trial court has no discretion to deny prevailing party status to a litigant who falls within one of the four statutory categories in the first prong of the provision. "As rewritten [in 1986], section 1032 now declares that costs are available as 'a matter of right' when the prevailing party is within one of the four categories designated by statute. (§ 1032, subds. (a)(4), (b).)" (*Michell v. Olick* (1996) 49 Cal.App.4th 1194, 1197 [57 Cal.Rptr.2d 227]; accord, *Building Maintenance Service Co. v. AIL Systems, Inc.* (1997) 55 Cal.App.4th 1014, 1025 [64

Cal.Rptr.2d 353]; see also, 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 90, p. 620; cf., *Sears, supra,* 60 Cal.App.4th at p. 1156 [describing the statutory categories as "guidelines"].)

Consistent with the foregoing authority, the parties in this case acknowledge the automatic nature of a prevailing party determination under the first prong of the statute. As Wakefield puts it: "A party meeting any one of these [four] definitions is the prevailing party as a matter of right under . . . § 1032(b)." The Bohlins agree, characterizing the first prong as including "four categories of mandatory prevailing parties."

### 2. *The automatic nature of the determination applies to all four categories*

■ Under the first category, "the court *must* award reasonable and reasonably necessary costs to a party who has obtained a 'net monetary recovery.' " (*Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139, 1151 [67 Cal.Rptr.2d 543], italics added, disapproved on other points in *Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246, 1261 [13 Cal.Rptr.3d 793, 90 P.3d 752]; *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 775, fn. 6 [98 Cal.Rptr.2d 1, 3 P.3d 286]. Cf., *Sears, supra,* 60 Cal.App.4th at p. 1155 [stating that the statute does not "limit[] the court's inquiry solely to net monetary recovery"].) A litigant with a straightforward net monetary recovery falls squarely within the first statutory definition and thus qualifies categorically as a prevailing party. "It is clear from the statutory language that when there is a party with a 'net monetary recovery' (one of the four categories of prevailing party), that party is entitled to costs as a matter of right; the trial court has no discretion to order each party to bear his or her own costs." (*Michell v. Olick, supra,* 49 Cal.App.4th at p. 1198.)

In contrast to the first category, which applies to any party, the other three categories affect defendants only. As with the first category, however, a determination of prevailing party status generally is automatic for a defendant who falls within any of them.

In *Santisas,* the California Supreme Court adverted to this conclusion in connection with the second category, saying: "Because plaintiffs voluntarily dismissed this action with prejudice, the seller defendants are defendants in whose favor a dismissal has been entered. Accordingly, they are 'prevailing parties' within the meaning of . . . section 1032, subdivision (b), and are 'entitled as a matter of right to recover costs' unless another statute expressly provides otherwise." (*Santisas, supra,* 17 Cal.4th at p. 606; see also, e.g., *Crib Retaining Walls, Inc. v. NBS/Lowry, Inc., supra,* 47 Cal.App.4th at p. 890.) By the same logic, prevailing party status is nondiscretionary under the third

categorical definition, which applies when neither the plaintiff nor the defendant obtains any relief. (See, e.g., *Chaparral Greens v. City of Chula Vista, supra*, 50 Cal.App.4th at p. 1152; *Childers v. Edwards, supra*, 48 Cal.App.4th at p. 1549.) The same is also true with respect to the fourth definitional category of prevailing party, which specifies "a defendant as against those plaintiffs who do not recover any relief against that defendant." (§ 1032, subd. (a)(4); see, e.g., *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 128 [84 Cal.Rptr.2d 753] [because "MPG was a defendant against whom Nelson obtained no relief, MPG was the prevailing party"].) Generally speaking, under any of these three sets of circumstances, the defendant categorically qualifies as the prevailing party.

B. *Section 1032, Subdivision (a)—Second Prong*

■ The second prong of the statutory definition provides for situations not described in the first prong. That part of the statute reads: "When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034." (§ 1032, subd. (a)(4).)

The operation of this second prong has been described as follows: "Where the prevailing party is one not specified, . . . section 1032, subdivision (a)(4) permits the trial court to determine the prevailing party and then allow costs or not, or to apportion costs, in its discretion. The statute requires the trial court to determine which party is prevailing and then exercise its discretion in awarding costs." (*Texas Commerce Bank v. Garamendi* (1994) 28 Cal.App.4th 1234, 1248–1249 [34 Cal.Rptr.2d 155], fn. omitted; accord, *Lincoln v. Schurgin* (1995) 39 Cal.App.4th 100, 105 [45 Cal.Rptr.2d 874].) The second prong of the statute thus "permits [a] ruling . . . ordering each side to pay its own costs, even [where] appellants were without question the prevailing parties"—having sought and obtained nonmonetary declaratory relief. (*Texas Commerce Bank v. Garamendi*, at p. 1249; cf., e.g., *Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 94 [14 Cal.Rptr.3d 67, 90 P.3d 1223] [where homeowners association won declaratory and injunctive relief, "the trial court did not abuse its discretion in determining that the Association was the prevailing party"].)

This prong of the statute thus calls for the trial court to exercise its discretion both in determining the prevailing party and in allowing, denying, or apportioning costs. It operates as an express statutory exception to the general rule that a prevailing party is entitled to costs as a matter of right. (§ 1032, subd. (b).)

### III. *Application to this Case*

#### A. *Review Standard*

"On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142 [118 Cal.Rptr.2d 569]; accord, *Baker-Hoey v. Lockheed Martin Corp.* (2003) 111 Cal.App.4th 592, 596 [3 Cal.Rptr.3d 593]; *Acosta v. SI Corp.* (2005) 129 Cal.App.4th 1370, 1374 [29 Cal.Rptr.3d 306]; see also, e.g., *Silver v. Boatwright Home Inspection, Inc.* (2002) 97 Cal.App.4th 443, 448–449 [118 Cal.Rptr.2d 475].) On the other hand, depending on the circumstances of the case, the prevailing party determination, the cost award, or both may be committed to the trial court's discretion. (*Silver v. Boatwright Home Inspection, Inc.*, at p. 449.) In such cases, we review the trial court's determination for an abuse of discretion. (*Ibid.*)

#### B. *Prevailing Party Determination*

We first consider whether the nondiscretionary prong of section 1032 applies to any of the litigants. At issue is "whether the criteria for an award of attorney fees and costs in this context have been satisfied . . . ." (*Carver v. Chevron U.S.A., Inc., supra*, 97 Cal.App.4th at p. 142.) That issue presents a question of law. (*Ibid.*)

We start with the first category described in the statute, which defines a prevailing party as one with a net monetary recovery. (§ 1032, subd. (a)(4).)

##### 1. *Did Wakefield obtain a net monetary recovery?*

Wakefield argues that he falls within this first category, having won a jury verdict of nearly $34,000 from Jeff Bohlin. The Bohlins disagree, arguing that Wakefield "did not obtain a net monetary recovery, because his award was smaller than the amount of his settlements with the other defendants."

The parties' competing contentions require us to consider the effect of the other defendants' settlements. As we now explain, although Wakefield's judgment may have been reduced to zero by operation of section 877, that circumstance does not affect the prevailing party determination under section 1032.

### a. *Effect of settlement on the judgment under section 877*

██ Under section 877, a release "given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort . . . [¶] . . . shall reduce the claims against the others in the amount stipulated by the release . . . or in the amount of the consideration paid for it whichever is the greater." Section 877 thus "requires that a judgment be reduced by amounts paid by settling joint tortfeasors." (*Jaramillo v. State of California* (1978) 81 Cal.App.3d 968, 971 [146 Cal.Rptr. 823].) "Where a plaintiff's settlement completely offsets the damages assessed against a nonsettling joint tortfeasor, it reduces the judgment to zero by operation of law." (*Syverson v. Heitmann* (1985) 171 Cal.App.3d 106, 110 [214 Cal.Rptr. 581].)

"The purpose of this legislation is to provide for equitable sharing of damages among the parties at fault and to encourage settlement." (*Great Western Bank v. Converse Consultants, Inc.* (1997) 58 Cal.App.4th 609, 613 [68 Cal.Rptr.2d 224].) "In addition, the offset provided for in section 877 assures that a plaintiff will not be enriched unjustly by a double recovery, collecting part of his total claim from one joint tortfeasor and all of his claim from another." (*Reed v. Wilson* (1999) 73 Cal.App.4th 439, 444 [86 Cal.Rptr.2d 510].) But "a plaintiff does not get double recovery when obtaining costs from a remaining defendant, unless plaintiff's compromise agreement with the joint tortfeasor covers costs of pursuing the action against the remaining defendant." (*Id.* at p. 445.) Beyond promoting equitable sharing, encouraging settlement, and guarding against double recovery, the good faith settlement statutes embody "another important public policy: ' "the maximization of recovery to the plaintiff for the amount of . . . injury to the extent that negligence or fault of others has contributed to it.". . . .' " (*Franklin Mint Co. v. Superior Court* (2005) 130 Cal.App.4th 1550, 1556–1557 [31 Cal.Rptr.3d 319].)

Here, although both parties refer to good faith settlements between Wakefield and the settling defendants, the appellate record does not include them. We nevertheless assume that the trial court found the realtor defendants to be joint tortfeasors with Jeff Bohlin with respect to Wakefield's negligent misrepresentation claim. We likewise assume that the trial court offset the damages that Wakefield won on that claim, applying the $45,000 settlement from the realtor defendants against the $33,950 verdict from Jeff Bohlin, thereby bringing Wakefield's net judgment to zero.

### b. *Effect of settlement on the prevailing party determination under section 1032*

Assuming that a good faith settlement reduced Wakefield's *judgment* to zero, that circumstance does not compel a finding that he failed to obtain a *net monetary recovery*. To the contrary, we conclude, Wakefield did obtain such a recovery from Jeff Bohlin.

### (i) *Current statutory language*

In reaching that conclusion, we begin with the statutory language. (See, e.g., *Pirkig v. Dennis* (1989) 215 Cal.App.3d 1560, 1565 [264 Cal.Rptr. 494].) The relevant portion of the statute defines prevailing party to include "the party with a net monetary recovery." (§ 1032, subd. (a)(4).)

The first part of the pertinent statutory phrase—"net monetary"— comes into play in situations when parties on both sides of the litigation have damage claims against each other. Thus, when "plaintiff and defendant [have] competing monetary claims, then the party in whose favor the net amount is due qualifies as the prevailing party, the party with a net monetary recovery." (*Michell v. Olick, supra,* 49 Cal.App.4th at p. 1198; accord, *Biren v. Equality Emergency Medical Group, Inc.* (2002) 102 Cal.App.4th 125, 139 [125 Cal.Rptr.2d 325].) Thus, for example, where the defendants have dismissed their cross-complaint, leaving the plaintiff as "the only party seeking damages," *any* award in the plaintiff's favor qualifies as a net monetary recovery. (*Michell v. Olick,* at p. 1198.) This principle of setting off competing counterclaims to determine net recovery has long been the rule. More than 70 years ago, the California Supreme Court entertained cross-appeals "from a judgment establishing a balance due from the defendant [property owner], to the plaintiffs, . . . contractors under a building construction contract." (*Hansen v. Covell* (1933) 218 Cal. 622, 624 [24 P.2d 772].) "During the course of the trial the owner paid the claims of mechanics who had filed liens . . . ." (*Id.* at p. 625.) For purposes of the cost award, the court netted the amounts due on either side of the litigation, saying: "The total of the lien claims plus the interest thereon . . . deducted from the amount found due to the plaintiffs from the defendant, still leaves a balance due to the plaintiffs, and this condition under the findings also disposes of the contention that the [plaintiff] contractors are not entitled to their costs in the trial court." (*Id.* at pp. 632–633.)

The second part of the relevant statutory phrase is "recovery." As generally understood, the term "recovery" is broad enough to encompass any damage award. (Cf. *People v. Reis* (1888) 76 Cal. 269, 279 [18 P. 309] [as used in former Pol. Code, § 3886, "recovery" is broadly construed, consistent with

"its ordinary and popular meaning"].) "The words 'recovery' or 'recovered' have the common connotation of representing the *entirety* of a sum obtained by process and course of law which includes settlement . . . ." (*Dunne & Gaston v. Keltner* (1975) 50 Cal.App.3d 560, 564 [123 Cal.Rptr. 430] [broadly interpreting agreement between law firm and withdrawing attorney for recovery of fees].)

Thus, we conclude, the party with the net monetary recovery is determined by comparing the competing damage claims on both sides of the litigation. If both sides have claims, whichever party obtains the most money from the other prevails. If only one party has damage claims, any success in pressing those claims against the losing party results in a net award.

### (ii) *Comparison with predecessor statute*

Our construction of the statutory language is bolstered by contrasting the present provision with the predecessor statute. "The current version of section 1032 is the product of a 1986 major revision of the statutes governing the recovery of costs. The legislation was sponsored by the California Judges Association. (Sen. Rules Com. [Off. of Sen. Floor Analyses], 3d reading analysis of Sen. Bill No. 654 (1985–1986 Reg. Sess.) as amended July 8, 1986, pp. 1–3.) Senate Bill No. 654, as enacted, repealed former section 1032 and enacted a new section 1032 in its place." (*Acosta v. SI Corp.*, *supra*, 129 Cal.App.4th at p. 1375.) Nothing in the new statute or its history suggests a legislative intent to constrict the class of prevailing parties, however. (*Ibid.*; see also *Pirkig v. Dennis, supra*, 215 Cal.App.3d at pp.´ 1565–1566.)

Prior to 1986, the statute allowed costs as a matter of right to a "plaintiff upon a *judgment* in his favor." (Former § 1032, subd. (a), italics added.) Under the former statute, and "even without competing monetary claims, a plaintiff who received only partial recovery was still found to be the sole successful party entitled to costs." (*Michell v. Olick, supra*, 49 Cal.App.4th at pp. 1198–1199.) Furthermore, despite the explicit reference in the former statute to a "judgment," courts had no difficulty awarding costs to plaintiffs who won a verdict that was later offset by compensation from other parties. (See, e.g., *Ferraro v. Southern Cal. Gas Co.* (1980) 102 Cal.App.3d 33, 52 [162 Cal.Rptr. 238] (*Ferraro*); *Syverson v. Heitmann, supra*, 171 Cal.App.3d at p. 113.) In *Ferraro*, for example, the court rejected the argument "that appellants, while they did receive a verdict in their favor, did not receive a favorable net judgment." (*Ferraro*, at p. 52.) As the *Ferraro* court explained: "To consider appellants as not having received a 'favorable judgment' would exalt form over substance. They certainly were the prevailing party in the lawsuit and the fact that the [defendant] did not have to actually pay them any damages was due not to any deficiency in their case, but due to

circumstances not directly stemming from the issues regarding liability as litigated between the parties. Disallowance of an award of costs to appellants under these circumstances could only be based upon a hypertechnical construction of the words of section 1032 . . . unsupported by case law." (*Id.* at pp. 52–53.)

The current language of the statute, which employs the phrase "net monetary recovery" rather than the term "judgment," makes it even easier to distinguish between a jury verdict awarding net damages to a litigant (a net recovery) and the ultimate judgment, which necessarily comes later and may reflect offsets from other parties' contributions. (§ 1032, subd. (a)(4).) To summarize, as used in section 1032, subdivision (a)(4), "net monetary recovery" is determined after netting out any competing damage claims as between the plaintiff and the defendant, without regard to settlements or other contributions from unrelated defendants or from other parties.

### (iii) *Case authority*

Our construction of the statutory language is borne out by cases decided both before and after section 1032 was rewritten in 1986. (See, e.g., *Zamora v. Shell Oil Co.* (1997) 55 Cal.App.4th 204, 215 [63 Cal.Rptr.2d 762] [the cases decided before 1986 "continue to have precedential effect"].)

■ As courts have repeatedly emphasized: "Settlements by other parties and corresponding offsets do not affect a prevailing party determination." (*Great Western Bank v. Converse Consultants, Inc., supra*, 58 Cal.App.4th 613, citing *Zamora v. Shell Oil Co., supra*, 55 Cal.App.4th at pp. 213–215; *Pirkig v. Dennis, supra*, 215 Cal.App.3d at pp. 1565–1568; *Syverson v. Heitmann, supra*, 171 Cal.App.3d at pp. 112–114; see also *Ferraro, supra*, 102 Cal.App.3d at pp. 52–53.) The *Zamora* case demonstrates the operation of that principle: "Had some of Western's codefendants not settled with the homeowners prior to or during trial, judgments would have been entered against Western in the aggregate amount of 20 percent of $222,282. Under these circumstances, Western cannot proclaim itself to be the section 1032 prevailing party." (*Zamora v. Shell Oil Co.*, at p. 215.)

We agree with the foregoing statements of law, which necessarily follow from our interpretation of the statutory phrase "net monetary recovery."[5] We therefore hold as follows: When a jury verdict results in a damage award for one litigant, that party has obtained a net monetary recovery for purposes of

---

[5] The *Pirkig* case appears to conflate the concepts of net monetary recovery and net judgment, as reflected in this passage: "The only reason respondents failed to obtain a net monetary recovery [from the remaining defendant, the realtor] at the second trial was because respondents settled before trial with the sellers for a greater amount than awarded by the

the prevailing party determination under section 1032, even if the judgment is later reduced to zero as a result of offsets for good faith settlements under section 877.

### c. *Conclusion: Categorically, Wakefield is the prevailing party, entitled to costs as a matter of right*

In this case, Wakefield won a verdict against Jeff Bohlin. Neither Jeff Bohlin nor Charlotte Bohlin had any claims against Wakefield. Thus, this is not a situation where both sides were victorious on competing claims. (Cf. *Lincoln v. Schurgin, supra,* 39 Cal.App.4th at p. 105 [where plaintiffs obtained a money judgment, and defendants obtained declaratory relief on their cross-complaint, the second statutory prong applied and the trial court had discretion to determine the prevailing party].) Moreover, the fact that Wakefield succeeded on only one cause of action does not operate to deprive him of his status as prevailing party. (*Michell v. Olick, supra,* 49 Cal.App.4th at p. 1199; see also *id.* at pp. 1200–1201.) Nor is this a case where Wakefield's "net recoveries . . . were actually Pyrrhic victories." (*Sears, supra,* 60 Cal.App.4th at p. 1155.)

For all of these reasons, under the nondiscretionary statutory definition, Wakefield is the prevailing party. We therefore reject the Bohlins' contrary assertion that "the trial court had the authority to decide whether [Wakefield] or Jeff Bohlin had prevailed."

### 2. *Was Jeff Bohlin a prevailing party?*

Relying on the second prong of the statute, the Bohlins assert that the trial court had discretion to determine that Jeff Bohlin prevailed and that Wakefield did not. As just explained, however, that assertion must be rejected. Wakefield falls within the first prong of the statute; the trial court thus was required to find that Wakefield prevailed. (§ 1032, subd. (a)(4).) That said, there is no basis on which Jeff Bohlin can be deemed to qualify as a prevailing party. To the contrary, Jeff Bohlin lost at trial, and Wakefield recovered against him. In short, Jeff Bohlin is not a prevailing party under section 1032.

### 3. *Was Charlotte Bohlin a prevailing party?*

According to the Bohlins, this question must be answered in the affirmative. As they point out, it is undisputed that the jury entered verdicts in favor

---

second court." (*Pirkig v. Dennis, supra,* 215 Cal.App.3d at p. 1566.) To the extent that *Pirkig* can be read as equating net monetary recovery with judgment after offsets, we disagree with its conclusion.

of Charlotte Bohlin on the intentional and negligent misrepresentation causes of action. Thus, they argue, Charlotte Bohlin categorically qualifies as a prevailing party under the first prong of the statute, fourth category, being "a defendant as against those plaintiffs who do not recover any relief against that defendant." (§ 1032, subd. (a)(4).)

The argument advanced by the Bohlins derives from the language of the statute, and we acknowledge its validity—as a general principle. But in this case, as we explain, an exception overrides that general rule.

### a. *The general rule*

The general rule under this portion of section 1032, as expressed by Witkin, is as follows: "One defendant who prevails may recover costs even though the plaintiff recovers against another defendant." (7 Witkin, Cal. Procedure, *supra*, Judgment, § 94, p. 625.)

### b. *Exception for defendants with a unity of interest*

As Witkin further observes, however, there is an exception: "In those instances in which several defendants are united in interest or join in making the same defenses in the same answer, the prevailing defendant definition in . . . 1032(a)(4) *does not apply* and the defendant against whom the plaintiff does not recover is not entitled to costs as a matter of right. Instead the allowance or disallowance of costs to the prevailing defendant lies within the sound discretion of the court, as does the apportionment of those costs, if allowed." (7 Witkin, Cal. Procedure, *supra*, Judgment, § 94, pp. 625–626, italics added.) Put another way, "where one of multiple, jointly represented defendants presenting a unified defense prevails in an action, the trial court has discretion to award or deny costs to that party." (*Textron Financial Corp. v. National Union Fire Ins. Co.* (2004) 118 Cal.App.4th 1061, 1075 [13 Cal.Rptr.3d 586].)

The unity of interest principle originally was a creature of statute. (See, e.g., *Smith v. Circle P. Ranch Co.* (1978) 87 Cal.App.3d 267 [150 Cal.Rptr. 828], quoting former § 1032.)[6] Its application was described in the *Smith* case as follows: "In those instances in which several defendants are united in interest and/or join in making the same defenses in the same answer, the

---

[6] Former section 1032 allowed costs as a matter of right to " 'the defendant upon a judgment in his favor . . . [and] when there are several defendants in any action . . . not united in interest, and making separate defenses by separate answers, and plaintiff fails to recover judgment against all, the court must award costs to such of the defendants as have judgment in their favor.' " (Former § 1032, as quoted in *Smith v. Circle P. Ranch Co., supra*, 87 Cal.App.3d at p. 271, italics omitted.)

allowance or disallowance of an award to prevailing defendants lies within the sound discretion of the trial court." (*Smith v. Circle P. Ranch Co., supra,* 87 Cal.App.3d at p. 272.) Although the statutory language has changed, the underlying precept enunciated in *Smith* continues to apply. (See, e.g., *Textron Financial Corp. v. National Union Fire Ins. Co., supra,* 118 Cal.App.4th at p. 1075; *Slavin v. Fink* (1994) 25 Cal.App.4th 722, 726 [30 Cal.Rptr.2d 750].)

Factually, the unity of interest principle has been applied where, for example, the losing defendant was a company associated with the winning defendants. (*Smith v. Circle P. Ranch Co., supra,* 87 Cal.App.3d 267.) It has also been applied where the losing defendant was a property owner and the winning defendant was her agent. (*Slavin v. Fink, supra,* 25 Cal.App.4th 722.) In this case, where the defendants were husband and wife, sued as a result of their joint sale of a home, their unity of interest appears equally strong, if not stronger.

    c.  *Conclusion: Charlotte Bohlin does not categorically qualify as a prevailing party*

According to the undisputed facts, Jeff Bohlin (the losing defendant) and Charlotte Bohlin (the winning defendant) were represented by the same attorney, filed a joint answer to Wakefield's complaint, and joined in the same motions and responses. The Bohlins thus share a unity of interest. For that reason, the categorical prevailing party definition "does not apply" to Charlotte Bohlin. (7 Witkin, Cal. Procedure, *supra,* Judgment, § 94, pp. 625–626.)

    4.  *The trial court erred in making its prevailing party determinations*

As explained above, Wakefield categorically qualifies as a prevailing party as a matter of law under the first prong of section 1032, subdivision (a)(4). The trial court thus erred in finding that he was not. The trial court likewise erred in finding that Jeff Bohlin was a prevailing party. As to Charlotte Bohlin, she does not categorically qualify as a prevailing party with statutory entitlement to an award of costs.

C.  *Allowance of Costs*

Given the trial court's erroneous prevailing party determinations, it is not clear that the court understood the nature and extent of its discretion in awarding costs. Under the first prong of section 1032, subdivision (a)(4), the trial court lacks discretion to deny litigation costs to a litigant who categorically qualifies as the prevailing party. Plaintiff Ronald Wakefield falls within this prong. Under the second prong of the statute, the trial court retains discretion to award, deny, or allocate costs. Defendant Charlotte Bohlin falls

within this prong. In exercising its discretion under the second prong, the trial court necessarily is guided by applicable legal principles.

A key consideration in the court's exercise of discretion is the necessity for the claimed costs. (See, e.g., *Fennessy v. DeLeuw-Cather Corp.* (1990) 218 Cal.App.3d 1192, 1194–1195 [267 Cal.Rptr. 772] [prevailing defendant was not entitled to all of the costs that he claimed "because they had been incurred collectively by all the defendants"].) As explained in the Judges Benchbook: "A prevailing party is entitled to recover only those costs actually incurred by that party or on that party's behalf in prosecuting or defending the action. When a prevailing party has incurred costs jointly with one or more other parties who are not prevailing parties for purposes of an award of costs, the judge must apportion the costs between the parties." (Cal. Judges Benchbook: Civil Proceedings—Trial (CJER 1997) Judgment, § 16.40, p. 686; see also, e.g., *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1297 [87 Cal.Rptr.2d 497] [in indemnity action, where plaintiffs won against three of four remaining defendants, "the trial court's failure to apportion the attorney fees was an abuse of discretion"].)

A related factor is fairness, as explained in *Slavin v. Fink, supra*, 25 Cal.App.4th 722. In that case, the plaintiff contractor prevailed at trial against the property owner, defendant Borinstein, but he lost against her agent, defendant Fink. Although Fink was a prevailing defendant, the trial court taxed his costs, explaining: " 'Fink has claimed the same costs as could have been claimed by [Borinstein], had she been a prevailing party in the case. . . . Borinstein was the "main" defendant in the case. Fink acted as her disclosed agent. . . . Fink became entitled to a judgment in his favor by the mere failure of [plainitiff] Slavin to present any evidence in support of a judgment against him personally.' " (*Id.* at pp. 724–725.) The trial court thus concluded that "an allocation must be made between the costs Borinstein would have been entitled to had she prevailed, and those necessarily incurred by Fink." (*Id.* at p. 725.) The trial court made a discretionary allocation, awarding Fink the cost of his appearance fee, plus 5 percent of the remaining costs claimed by him. (*Ibid.*) That award was affirmed on appeal. (*Id.* at p. 727.) As the appellate court stated: "Under the circumstances, it would have been *unjust* to allow appellant to impose upon respondent all costs incurred which benefitted both appellant and Borinstein." (*Id.* at p. 726, italics added.) We believe that the same is true here.

Yet another pertinent consideration is whether the parties achieved their principal litigation objectives. (Cf. *Villa De Las Palmas Homeowners Assn. v. Terifaj, supra*, 33 Cal.4th at p. 94.) Here, Wakefield won recovery—by settlement or verdict—from all defendants except Charlotte Bohlin, albeit not on every cause of action and not in the amount he sought. A plaintiff's

litigation objectives may be achieved through settlement with some defendants, even where others escape liability; at the same time, of course, such settlement also may advance the objectives of nonsettling defendants, like the Bohlins, by reducing their liability. (See *Silver v. Boatwright Home Inspection, Inc., supra*, 97 Cal.App.4th at p. 452.)

Beyond necessity, fairness, and litigation success, other factors may be relevant here. (See, e.g., Cal. Judges Benchbook: Civil Proceedings—Trial, *supra*, Judgment, § 16.40, p. 686.) To the extent that such factors apply, the trial court may consider them in the exercise of its discretion in apportioning costs.

### D. *Allowance of Attorney Fees*

On appeal, neither party disputes the propriety of awarding attorney fees as an element of costs. To the contrary, both sides maintain entitlement to a fee award, notwithstanding the fact that the case was tried exclusively on Wakefield's noncontract claims.

#### 1. *Statutory basis for an attorney fee award*

Because there was no action on the contract in this case, Civil Code section 1717 has no operation here. (See, e.g., *Santisas, supra*, 17 Cal.4th at pp. 615, 619; *Childers v. Edwards, supra*, 48 Cal.App.4th at p. 1548.) The prevailing party determination instead depends on the application of section 1032, as complemented by sections 1021 and 1033.5. (*Childers v. Edwards*, at p. 1549.)

#### 2. *Entitlement to fees as prevailing party*

##### a. *Section 1032*

We start with section 1032 in determining the prevailing party for purposes of an award of attorney fees. More specifically, we look to the statute's straightforward definition of prevailing party as a litigant with a net monetary recovery. For all the reasons explained above, Wakefield falls squarely within that definition.

Here, no countervailing statutory provision casts doubt on that definition. In this case, whether "prevailing party" is defined under Civil Code section 1717 or under section 1032, it means the same thing. (Cf. *Santisas, supra*, 17 Cal.4th at pp. 608–609 [discussing the differing definitions of "prevailing party" under the two statutes, where the litigation ends by voluntary dismissal].) Thus, this is not a case where "the term has more than one technical

meaning." (*Id.* at p. 609.) Hence, this is not a case where "the court must look to the parties' contractual attorney's fees provision to determine if it defines who is a prevailing party . . . ." (*Silver v. Boatwright Home Inspection, Inc., supra,* 97 Cal.App.4th at p. 452.) That being so, for purposes of analysis under section 1032, we need not separately determine prevailing party status under the real estate purchase contract.

Section 1032 itself does not specifically refer to attorney fees, however. Instead, the allowance of fees is governed by sections 1021 and 1033.5. We therefore consider the operation of those provisions.

### b. *Sections 1021 and 1033.5*

As relevant here, sections 1021 and 1033.5 tether the right to recover attorney fees to the parties' contract. Under those provisions, "attorney fees incurred in prosecuting or defending an action may be recovered as costs only when they are otherwise authorized by statute or by the parties' agreement." (*Santisas, supra,* 17 Cal.4th at p. 607, fn. 4.) In this case, "the party entitled to costs has a legal basis, independent of the cost statutes and grounded in an agreement, . . . upon which to claim recovery of attorney fees." (*Id.* at p. 606.) That agreement—the parties' real estate purchase contract—provides that "the prevailing Buyer or Seller shall be awarded reasonable attorneys' fees and court . . . costs in addition to any other judgment or award."

Since neither party presented any extrinsic evidence to shed light on the contract's meaning, determining who prevailed under the contractual language presents a question of law. "Where extrinsic evidence has not been offered to interpret the [contract], and the facts are not in dispute, such review is conducted de novo." (*Carver v. Chevron U.S.A., Inc., supra,* 97 Cal.App.4th at p. 142.) And as our high court instructs, "in the absence of evidence to the contrary, [we assume] that the parties understood the term [prevailing party] in its ordinary or popular sense." (*Santisas, supra,* 17 Cal.4th at p. 609, fn. omitted.)

Using the term "prevailing" in its ordinary sense, Wakefield is the prevailing buyer here. His "objective in bringing this litigation was to obtain the relief requested in the complaint. The objective of the seller defendants in this litigation was to prevent [him] from obtaining that relief." (*Santisas, supra,* 17 Cal.4th at p. 609.) At the end of the day, Wakefield obtained monetary relief, and the Bohlins did not prevent him from doing so. "Plaintiff[] obtained [his] litigation objective, recovery of damages, through settlements with defendants other than [the Bohlins]." (*Silver v. Boatwright Home Inspection, Inc., supra,* 97 Cal.App.4th at p. 446.) In addition, Wakefield won a jury verdict from Jeff

Bohlin. Thus, even "if we consider only the rules of contract law, [Wakefield is] entitled to recover the amounts [he] incurred as attorney fees in [prosecuting] all claims asserted in this action." (*Santisas*, at p. 609.)

Conversely, Charlotte Bohlin is not the prevailing seller. In the first place, the contract plainly contemplates that only one party will prevail—either the buyer (Wakefield) *or* the seller (both Jeff and Charlotte Bohlin together). Since Wakefield is the prevailing buyer under the contractual language, Charlotte Bohlin cannot be. This conclusion is consistent with the determination that the Bohlins are united in interest in this litigation, whether that concept is tested under the statute or under the contractual language.

### 3. *Effect of the mediation clause*

In light of our determination that Wakefield is the prevailing party, we need not reach the issue that he raises concerning the Bohlins' asserted failure to mediate, as required by the real estate purchase agreement as a condition of a fee award. (Cf. *Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1512 [22 Cal.Rptr.3d 429] [sellers who "refused the [buyers'] request for mediation . . . may not recover their attorney fees, despite the fact they were the prevailing parties in the litigation"].)

### 4. *Amount of the attorney fee award*

It is well settled that "the trial court has broad authority to determine the amount of a reasonable fee." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511] [contract action]; see also, e.g., *Carver v. Chevron U.S.A., Inc., supra,* 97 Cal.App.4th at p. 142.) On remand, the trial court shall exercise its discretion in setting the amount of Wakefield's fees.

## SUMMARY OF CONCLUSIONS

██ Under the first prong of section 1032, subdivision (a)(4), plaintiff Ronald Wakefield categorically qualifies as the prevailing party. He obtained a net monetary recovery, which entitles him to an award of litigation costs as a matter of right. Sections 1021 and 1033.5, combined with the parties' contract, provide that Wakefield's costs include reasonable attorney fees.

By contrast, defendant Charlotte Bohlin is governed by the second prong of the statute. Although the jury exonerated her, she is not entitled to costs as a matter of right because of her unity of interest with Jeff Bohlin. Any cost award in her favor is discretionary with the trial court and subject to apportionment. Furthermore, under the contract, she is not entitled to attorney fees.

## DISPOSITION

We reverse the postjudgment order of November 15, 2004. We remand the matter to the trial court with the following instructions: (1) the court shall find that Ronald Wakefield is the prevailing party and it shall award him costs, including attorney fees in an amount within its discretion; (2) the court shall exercise its discretion to award or deny costs to Charlotte Bohlin, and, if awarded, to apportion any costs she incurred jointly with Jeff Bohlin. The court shall not award attorney fees to Charlotte Bohlin.

Wakefield shall be entitled to his costs on appeal.

Elia, Acting P. J., concurred.

**MIHARA, J.,** Dissenting.—The key to this case is the statutory construction of the words "the party with a net monetary recovery" in Code of Civil Procedure section 1032's definition of "prevailing party." If plaintiff Ronald Wakefield was "the party with a net monetary recovery," the trial court was required to designate him as the prevailing party, our standard of review is de novo, and the trial court erred in failing to award him his costs. If Wakefield was not "the party with a net monetary recovery," the trial court was free to exercise its discretion to decide which party was the prevailing party, our standard of review is abuse of discretion, and we are required to defer to the trial court's discretionary decision. Because I am convinced that Wakefield was *not* "the party with a net monetary recovery," I dissent.

### I. Background

In March 2001, Wakefield purchased real property from defendants Jeff and Charlotte Bohlin. In June 2002, Wakefield filed an action against the Bohlins, the Bohlins' real estate agents and a plastering company. He asserted five causes of action against the Bohlins: negligence, strict liability, breach of implied warranty, negligent misrepresentation and fraud. Wakefield settled with the real estate agents for $45,000 and with the plastering company for $51,700 in advance of trial.

After all of his other causes of action were disposed of, Wakefield's causes of action for intentional and negligent misrepresentation against the Bohlins were submitted to a jury. The jury returned special verdicts in favor of the Bohlins on the intentional misrepresentation cause of action and in favor of Charlotte Bohlin on the negligent misrepresentation cause of action. The jury returned a verdict in favor of Wakefield on his negligent misrepresentation cause of action against Jeff Bohlin and set the damages at $33,950.

The court entered judgment in favor of Charlotte Bohlin and ordered that Wakefield "shall take nothing against Defendant Jeff Bohlin" due to Wakefield's prior settlements with the other defendants. Wakefield did not challenge the court's action offsetting the verdict to zero due to his settlement with the real estate agents.

The court's judgment provided that Charlotte Bohlin was entitled to her costs and attorney's fees, but it deferred the question of whether Jeff Bohlin or Wakefield was entitled to costs and attorney's fees. The Bohlins and Wakefield filed memorandums of costs, motions to strike or tax each other's costs, and motions seeking to recover their attorney's fees from each other. The trial court determined that the Bohlins were the prevailing parties and awarded them their costs and attorney's fees. Wakefield filed a timely notice of appeal.

## II.  Discussion

### A.  Interpretation of Code of Civil Procedure Section 1032

Wakefield claims that Code of Civil Procedure section 1032 *required* the trial court to designate *him* as the prevailing party. His claim requires us to construe the meaning of this statute.

#### 1.  Standard of Review

"The construction of a statute and its applicability to a given situation are matters of law to be determined by the court." (*Estate of Madison* (1945) 26 Cal.2d 453, 456 [159 P.2d 630].) "When construing a statute, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] The words of the statute are the starting point. 'Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.] If the language permits more than one reasonable interpretation, however, the court looks to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citation.] After considering these extrinsic aids, we must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977–978 [90 Cal.Rptr.2d 260, 987 P.2d 727].)

## 2. Common Meaning Is Clear and Unambiguous

The current version of Code of Civil Procedure section 1032 (section 1032) provides: " 'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034." (§ 1032, subd. (a)(4).) "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b).)

The question before us is whether, under section 1032, a plaintiff qualifies as "the party with a net monetary recovery" where the monetary value of a damages verdict in favor of the plaintiff against the defendant at trial is offset to zero due to settlements with other defendants and produces no net gain for the plaintiff. The common meaning of the word "net" is "free from all charges or deductions" or "to get possession of: GAIN." (Webster's Collegiate Dict. (10th ed. 1993) p. 780.) The word "monetary" obviously means "relating to money." (Webster's Collegiate Dict. (10th ed. 1993) p. 750.) The word "recover" means "to gain by legal process" or "to obtain a final legal judgment in one's favor." (Webster's Collegiate Dict. (10th ed. 1993) p. 977.) Thus, the common meaning of the phrase "the party with a net monetary recovery" is the party who gains money that is "free from . . . *all* deductions." (Italics added.)

A plaintiff who obtains a verdict against a defendant that is offset to zero by settlements with other defendants does not gain any money free from deductions. Such a plaintiff *gains nothing* because the deductions reduce the verdict to zero. Hence, the common meaning of the phrase "the party with a net monetary recovery" does not include such plaintiffs among those whom the trial court is required to declare the prevailing party.

Wakefield's theory appears to be that "the party with a net monetary recovery" was not intended to refer to a party's recovery after *all offsets* but only to a party's recovery after those offsets attributable to a verdict in favor of a particular adverse party. This distinction is between what might be called "direct offsets"—those between a particular plaintiff and a particular defendant—and "indirect offsets"—which include offsets for a plaintiff's settlements with other defendants.

While the Legislature could have reasonably chosen to draft section 1032 so that it distinguished between direct and indirect offsets, this theory runs aground on the unalterable fact that the Legislature included no language whatsoever in section 1032 which even suggests that it intended to make such a distinction. This court lacks the "power to rewrite the statute so as to make it conform to a presumed intention which is not expressed. This court is limited to interpreting the statute, and such interpretation must be based on the language used." (*Seaboard Acceptance Corp. v. Shay* (1931) 214 Cal. 361, 365 [5 P.2d 882].) "In interpreting statutes, we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law, ' " 'whatever may be thought of the wisdom, expediency, or policy of the act.' " ' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

The intent to distinguish between direct and indirect offsets is nowhere expressed in section 1032, and it defies the common meaning of the plain language that the Legislature actually chose to use in the statute. It is notable that the Legislature used the word "net" only in the first of the four definitions of those parties that the trial court was required to designate as the prevailing party. The third and fourth definitions used the words "any relief" and omitted the word "net," and the fourth definition also included language that was very specific as to the relationships between the parties. The Legislature's choice to use the word "net" in one definition and not the others confirms that it intended a different meaning when it used that word than when it did not, and its very specific language in the fourth definition shows that it knew how to be specific when it so desired.[1]

As the plain language of the statute is clear and unambiguous with regard to the meaning of the phrase "the party with a net monetary recovery," " 'there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' " (*Wilcox v. Birtwhistle, supra*, 21 Cal.4th at p. 977.) The analysis should end here. Yet, to forestall any argument that sources other than the plain language of the statute support an alternative construction, I will proceed to demonstrate that no support exists outside the statutory language for the distinction that Wakefield asks us to engraft onto section 1032.

---

[1] The result is that where a plaintiff does not achieve a "net monetary recovery" because the judgment is reduced to zero by indirect offsets, the trial court is not required to designate the defendant as the prevailing party because, while the plaintiff has failed to obtain a "net monetary recovery," the plaintiff has not failed to obtain "any relief." The discretionary provisions of section 1032 are therefore applicable.

### 3. Legislative History and Context

The history of section 1032 is instructive. Former section 1032 had since 1933 provided that a plaintiff or defendant was entitled to recover costs as a matter of right "upon a judgment in his favor." Where neither party obtained "a judgment in his favor," the court had discretion with regard to costs. (Stats. 1933, ch. 744, § 191, p. 1901.) In 1980, *Ferraro v. Southern Cal. Gas Co.* (1980) 102 Cal.App.3d 33 [162 Cal.Rptr. 238] (*Ferraro*) held that a judgment reduced to zero by offsets for settlements with other defendants (i.e., indirect offsets) was nevertheless "a judgment in [the plaintiffs'] favor" within the meaning of former section 1032.

In *Ferraro*, the plaintiffs had obtained insurance proceeds and then settled with two defendants during trial for a total recovery of over $100,000. (*Ferraro*, *supra*, 102 Cal.App.3d at p. 38.) The jury thereafter returned a damages verdict against the sole remaining defendant for less than $100,000. (*Ferraro*, at p. 40.) After deductions for the settlement and insurance proceeds, a judgment "of zero dollars" was entered. (*Ferraro*, at pp. 37, 40.) The trial court awarded the plaintiffs their costs. (*Ferraro*, at p. 40.) On appeal, the defendant claimed that the plaintiffs were not entitled to costs because they "did not receive a favorable net judgment." (*Ferraro*, *supra*, 102 Cal.App.3d at p. 52.) The Court of Appeal concluded that the judgment was still "favorable" to the plaintiffs for the purpose of costs recovery, even though the plaintiffs had not obtained a "net judgment." (*Ferraro*, at p. 52.) "To consider appellants as not having received a 'favorable judgment' would exalt form over substance. They certainly were the prevailing party in the lawsuit and the fact that the Gas Company did not have to actually pay them any damages was due not to any deficiency in their case, but due to circumstances not directly stemming from the issues regarding liability as litigated between the parties. Disallowance of an award of costs to appellants under these circumstances could only be based upon a hypertechnical construction of the words of section 1032, Code of Civil Procedure, unsupported by case law." (*Ferraro*, at pp. 52–53.) Thus, *Ferraro* held that the plaintiffs' failure to obtain a "net judgment," due to indirect offsets, did not mean that the plaintiffs had not obtained a "favorable judgment" within the meaning of former section 1032.

In February 1985, Senate Bill No. 654 (1985–1986 Reg. Sess.) (Senate Bill 654) was introduced proposing that former section 1032 be repealed and a new section 1032 be enacted. Senate Bill 654 proposed that a trial court be

required to identify "the party with a net monetary recovery" as the prevailing party and award that party its costs.[2] Senate Bill 654 also identified several other situations where the trial court would be required to identify a particular party as the prevailing party and in other situations granted the trial court discretion to designate either party as the prevailing party. Senate Bill 654 was sponsored by the California Judges Association to "eliminate confusion" and "simplify" the process for costs awards, thereby reducing court congestion and easing judicial workload. (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill 654, May 29, 1985; Assem. Jud. Com., Analysis of Sen. Bill 654, Apr. 4, 1986.)

In May 1985, while Senate Bill 654 was pending before the Legislature, *Syverson v. Heitmann* (1985) 171 Cal.App.3d 106 [214 Cal.Rptr. 581] was filed. In *Syverson*, the plaintiff had settled with codefendants in advance of trial for $100,000. The jury returned a verdict against the remaining defendant for $100,000. (*Syverson*, at p. 108.) The Court of Appeal described the result of the trial as a "zero net judgment" and noted "[t]he fact that plaintiff is not entitled to recover damages from defendant," but it concluded, relying on *Ferraro*, that the plaintiff had nevertheless "received 'a judgment in his favor' " and therefore was entitled to recover costs as a matter of right under former section 1032. (*Syverson*, at pp. 113, 114.) In July 1986, Senate Bill 654 was passed by the Legislature and signed by the Governor.

*Ferraro* and *Syverson* provide an informative context in which to consider the Legislature's intent in repealing former section 1032 and enacting a new section 1032. In those cases, the Courts of Appeal concluded that, even though the plaintiffs had failed to obtain "*net* judgment[s]" and were "not entitled to *recover*" any damages from the defendants due to indirect offsets, the plaintiffs were nevertheless entitled to recover their costs from the defendants under former section 1032 because the judgments were nevertheless "in [their] favor." (*Syverson v. Heitmann, supra*, 171 Cal.App.3d at pp. 112–113; see *id.* at p. 114; *Ferraro, supra*, 102 Cal.App.3d at pp. 51, fn. 4, 52, italics added.) The Legislature's decision in July 1986, after both *Ferraro* and *Syverson*, to repeal the "judgment in his favor" language in former section 1032 and replace it with "the party with a net monetary recovery" in the new section 1032 can easily be seen as a rejection of the results in *Ferraro* and *Syverson*. *Ferraro* and *Syverson* both dealt with *indirect* offsets and characterized the results of these indirect offsets as the absence of a recovery and the absence of a "*net*" judgment. In light of *Ferraro* and *Syverson*, the Legislature's decision to use the phrase "net monetary recovery" without any qualification that precluded consideration of indirect offsets demonstrated that the Legislature was aware that a party whose judgment was reduced to zero by indirect offsets would not be

---

[2] The committee reports and legislative analysis contain no specific information regarding the Legislature's intent on the precise question before us.

considered "the party with a net monetary recovery" and that the Legislature intended that the trial court not be required to designate such a party as a prevailing party.

Such an interpretation is also consistent with the overriding purpose of Senate Bill 654. Senate Bill 654 was intended to "eliminate confusion." *Ferraro* and *Syverson* demonstrated that former section 1032's "judgment in his favor" language was less than clear. Senate Bill 654's solution to this lack of clarity was to use language which could be applied with mathematical precision. A party would be entitled to be designated the prevailing party if that party achieved "a net monetary recovery." If the Legislature had intended to distinguish between indirect and direct offsets, it surely would have included precise language identifying that distinction in its attempt to "eliminate confusion." Its failure to do so reflects that it intended no such distinction.

### 4. Subsequent Cases

None of the cases that have interpreted the 1987 version of section 1032 have held that "the party with a net monetary recovery" includes a party who obtains a net zero judgment due to indirect offsets.

In *Pirkig v. Dennis* (1989) 215 Cal.App.3d 1560 [264 Cal.Rptr. 494] (*Pirkig*), the plaintiff buyers of real property obtained a jury verdict for $51,000 against the defendant sellers, agent and brokers. The agent was found to be responsible for 21 percent of the damages. (*Pirkig*, at p. 1563.) The court thereafter granted defense motions to dismiss the brokers from the case and for a new trial on damages. (*Pirkig*, at p. 1563.) While the new trial was pending, the plaintiffs settled with the sellers for $28,300. (*Pirkig*, at p. 1563.) At the new trial in which the only defendant was the agent, the court found that the plaintiffs' damages were limited to $7,500. After offsetting for the settlement with the sellers, the plaintiffs did not recover anything from the agent. (*Pirkig*, at p. 1563.) The trial court nevertheless found that the plaintiffs were the prevailing parties and awarded them their costs and attorney's fees. (*Pirkig*, at p. 1564.)

On appeal, the agent challenged the award of costs to the plaintiffs under section 1032. He claimed that they could not be prevailing parties because they had not obtained a "net monetary recovery." The Court of Appeal agreed that the plaintiffs had not obtained a "net monetary recovery," but it found no abuse of discretion in the trial court's *discretionary selection* of the plaintiffs as the prevailing parties under the discretionary provisions of section 1032. (*Pirkig, supra*, 215 Cal.App.3d at pp. 1565–1566.)

After reaching this unassailable conclusion, the Court of Appeal launched into a lengthy bit of dicta. "The only reason respondents failed to obtain a net monetary recovery at the second trial was because respondents settled before trial with the sellers for a greater amount than awarded by the second court. That such a coincidence does not affect the plaintiff's right to recover costs and attorney fees under section 1032 is well established by the governing case law, especially *Ferraro*[, *supra*,] 102 Cal.App.3d 33 and *Syverson v. Heitmann*[, *supra*,] 171 Cal.App.3d 106." (*Pirkig, supra*, 215 Cal.App.3d at p. 1566.) After discussing the facts and holdings in *Ferraro* and *Syverson*, the Court of Appeal returned to the crux of the matter. "[U]nder the unambiguous language of the amended statute, 'prevailing party' *includes* not only the party with net monetary recovery, but also in the discretion of the court, any party who recovers other than monetary relief and also includes all other parties who do not fall within the specified instances listed in the statute. The case at bench belongs in the latter categories." (*Pirkig*, at p. 1567.) Thus, *Pirkig* held that, where a plaintiff's verdict against a defendant is reduced to zero due to indirect offsets, the plaintiff is not "the party with a net monetary recovery" and therefore not necessarily the prevailing party, but the trial court may properly designate the plaintiff as the prevailing party under the discretionary provisions of section 1032.

In *Zamora v. Shell Oil Co.* (1997) 55 Cal.App.4th 204 [63 Cal.Rptr.2d 762] (*Zamora*), the jury returned a verdict for $222,282 in favor of the plaintiffs and found that 20 percent of the damages were attributable to defendant Western. However, the trial court entered a judgment of $0 due to the plaintiffs' prior settlements with other defendants. (*Zamora*, at p. 207.) The trial court found that the plaintiffs were the prevailing parties as against Western and awarded them their costs. (*Zamora*, at pp. 213, 214.) Western claimed that the plaintiffs should not be declared the prevailing parties because they had not actually recovered anything from Western. (*Zamora*, at pp. 213–214.) Relying on *Pirkig*, the Court of Appeal found no error in the trial court's discretionary selection of the plaintiffs as the prevailing parties. (*Zamora*, at pp. 214–215.)

In *Great Western Bank v. Converse Consultants, Inc.* (1997) 58 Cal.App.4th 609 [68 Cal.Rptr.2d 224] (*Great Western Bank*), the cross-defendant entered into a good faith settlement with the plaintiff and obtained dismissal of the cross-complaint. The trial court found the cross-defendant to be the prevailing party on the cross-complaint and awarded costs to cross-defendant against the defendant and cross-complainant. On appeal, the defendant and cross-complainant challenged the costs award to the cross-defendant. Since section 1032 explicitly provided that "a defendant in whose favor a dismissal is entered" is the prevailing party, the Court of Appeal concluded that the cross-defendant was entitled to be designated the prevailing party and to recover costs. (*Great Western Bank*, at pp. 612–613.) The Court of Appeal inexplicably included

the following dicta in its opinion: "Settlements by other parties and corresponding offsets do not affect a prevailing party determination. (*Zamora*[, *supra*,] 55 Cal.App.4th 204, 213–215 [63 Cal.Rptr.2d 762]; *Pirkig*[, *supra*,] 215 Cal.App.3d 1560, 1565–1568 [264 Cal.Rptr. 494]; *Syverson v. Heitmann*[, *supra*,] 171 Cal.App.3d 106, 112–114 [214 Cal.Rptr. 581].)" (*Great Western Bank*, at p. 613.) This statement had no impact on the result in *Great Western Bank* and was not supported by the cited cases.

Because *Pirkig*, *Zamora* and *Great Western Bank* were issued long after the Legislature's enactment of the version of section 1032 that contains the phrase "the party with a net monetary recovery," these cases do not tell us what the Legislature intended when it used that phrase. However, their holdings are consistent with the common meaning of the statutory language and the extrinsic evidence of the Legislature's intent. Both *Pirkig* and *Zamora* held that a party whose recovery is reduced to zero by indirect offsets and who therefore recovers a judgment of $0 is not "the party with a net monetary recovery." Such a party is simply eligible to be designated by the trial court as a prevailing party under the discretionary provisions of section 1032. *Great Western Bank* did not involve the phrase "the party with a net monetary recovery," and its dicta tells us nothing.

### 5. Summary

Nothing in the plain language of section 1032 reflects that "the party with a net monetary recovery" was intended to distinguish between indirect and direct offsets such that indirect offsets that eliminated any recovery and reduced the judgment to zero would not prevent a party from being "the party with a net monetary recovery." The history of the enactment of this language and the cases interpreting this language are completely consistent with the common meaning of the plain language of the statute. Accordingly, the trial court did not err in concluding that Wakefield was not "the party with the net monetary recovery" and refusing to find him to be the prevailing party.

### B. Discretionary Determination of Prevailing Party

Since the court was not obligated by section 1032 to select Wakefield as the prevailing party, it was free to exercise its discretion to select either party as the prevailing party under the discretionary provisions of section 1032. Wakefield claims that the court abused its discretion in deciding that Jeff Bohlin was the prevailing party.

Three of Wakefield's five causes of action against Jeff Bohlin were dismissed. Two were presented to the jury, and Jeff Bohlin prevailed on one of the two. On the sole remaining cause of action, the jury's verdict in favor

of Wakefield was for far less than Wakefield's settlement with Jeff Bohlin's joint tortfeasors (the real estate agents). Under these circumstances, the trial court could have reasonably concluded that Jeff Bohlin had prevailed at trial by successfully avoiding any financial obligation to Wakefield. The court did not thereby abuse its discretion.

### C. Attorney's Fees

Wakefield contends that, even if the Bohlins were properly determined to be the prevailing parties, the trial court erred in awarding the Bohlins their attorney's fees because they refused or resisted mediation.

### 1. Background

The purchase contract's attorney's fees clause provided that "the prevailing Buyer or Seller shall be awarded reasonable attorneys' fees and court or arbitration costs . . . ." The contract provided that the parties "agree to mediate any dispute between them arising out of this transaction" and "[a] buyer or seller who refuses or resists mediation shall not be entitled to recover prevailing party attorneys' fees." The mediation clause also provided that "matters excluded from arbitration . . . are also excluded from mediation." The arbitration clause provided that "matters to which [Code of Civil Procedure] §§ 337.1 or 337.15 apply" (i.e., construction defects) were excluded from arbitration.

In October 2001, an attorney representing Wakefield sent a letter to the Bohlins' attorney "demand[ing] binding arbitration" and stating "[w]e are prepared to mediate this dispute." The Bohlins' attorney responded with a list of "potential mediators or arbitrators . . . ." Wakefield's attorney responded by listing his first and second choices of "mediators." He asserted: "If we can not settle this case through mediation, then we would proceed to binding arbitration except as to the construction defects . . . . Those matters are an exception to arbitration, and Mr. Wakefield would proceed to a court action for those." The Bohlins' attorney responded: "Although not required we are willing to mediate this matter," and he sought available dates for a mediation. He also wrote: "I am curious as to which issues you feel would come within the mediation/arbitration clause since it is my understanding that all of Mr. Wakefield's claims relate to some kind of construction defect which are excluded from both the mediation clause and arbitration clause of the contract."

In December 2001, Wakefield's attorney sent a response to the Bohlins' attorney. "I think you are correct about the mediation/arbitration clause. In reviewing the contract, I see that claims concerning construction defects are

made exceptions to both mediation and binding arbitration. Those claims comprise the bulk of these issues I now see in this case. As a result, the contract gives us only a court action concerning the construction defects under various legal theories. [¶] Nevertheless, I think we should attempt a mediation [in order to comply] with the court's requirement for alternate dispute resolution in advance."

In January 2002, the Bohlins' attorney sent another letter to Wakefield's attorney. "As I told you on the telephone my client is not willing to mediated [*sic*] any claims relating to construction defects or which are excluded under the arbitration/mediation provisions of the Real Estate Purchase Contract. He is willing to submit all matters to binding arbitration. Therefore if your client is not willing to go to binding arbitration, I assume that he will have to file a complaint with the court and we will go from there."

Wakefield filed his action in June 2002. The action was submitted to mediation in December 2003, but the mediation failed.

## 2. Analysis

Wakefield claims that the Bohlins should be denied attorney's fees because they refused to mediate. The purchase contract did not obligate the parties to mediate construction defects claims. The exchange of letters between the parties' attorneys prior to the filing of the complaint reflects that Wakefield's attorney expressly represented to the Bohlins' attorney that Wakefield's claims were not subject to mediation under the contract's mediation clause because Wakefield's construction defect claims "comprise the bulk of these issues ... in this case." Since the complaint had not yet been filed, the Bohlins had no choice but to accept Wakefield's attorney's representation. Indeed, the Bohlins' attorney repeatedly expressed a willingness to mediate any claims to which the mediation clause applied. He only resisted mediation of claims to which the mediation clause did not apply. After Wakefield filed a complaint that included causes of action that were not for construction defects, the case was submitted to mediation.

On these facts, the trial court did not err in concluding that the Bohlins had not refused or resisted mediation and awarding them their attorney's fees as the prevailing parties.

### III. Conclusion

I would hold that the trial court did not err in determining that the Bohlins were the prevailing parties and awarding them their costs and attorney's fees.

Respondents' petition for review by the Supreme Court was denied March 14, 2007, S149467. Baxter, J., was of the opinion that the petition should be granted.